[Crim. No. 4566.   Third Dist.   Apr. 19, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS R. CAIN, Defendant and Appellant.

Edwin Verzyl, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Arnold O. Overoye, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant was tried before the court, sitting without a jury, for a violation of section 11500.5, Health and Safety Code, possession of heroin for sale. He appeals from the judgment of conviction.

On November 30, 1966, Melvin Cozzalio, an agent of the State Bureau of Narcotics, obtained a warrant permitting him to search the person of defendant and defendant's premises at 3649 Second Avenue, apartment 6, Sacramento. The affidavit in support of the warrant stated:

"On the date of November 30, 1966, at approximately 10 a.m. your affiant received information from a confidential informant whom your affiant considers to be reliable. This belief is founded upon your affiant's past experience with the informant. This belief is also founded upon the information presently received from this informant when considered and evaluated in the context of all of the facts and circumstances set forth in this affidavit. In the past this informant has given to your affiant information on two separate occasions that led to the arrest of at least three individuals, cases of which are still pending in the courts of the County of Sacramento, or which have been terminated by final disposition in said courts within the past three months. On the first occasion a search warrant was obtained on the basis of this informant's information and heroin was in fact located as per his information. On the second occasion information obtained from this informant was given to the postal inspectors, this information also proving reliable and leading to an arrest.

"........................

"Your affiant states that the said confidential reliable informant did speak with personal knowledge when imparting the information hereinafter set forth, unless and except where specifically stated to be otherwise.

"Your affiant was informed by said confidential reliable informant on the aforementioned date that the residence located at 3649 Second Avenue, apartment six, Sacramento, California, did in fact contain heroin and narcotics paraphernalia. The heroin was packaged in balloons, each balloon containing a $25 quantity of heroin, and the balloons were contained in a plastic bag and were in the possession of THOMAS RUSSELL KING, aka THOMAS RUSSELL KANE, aka KILLER KANE.''

On several occasions after issuance of the warrant, Cozzalio went to the neighborhood of defendant's premises in order to effect the search. Each time, not having seen defendant's car, he would make no further attempt. Finally, on December 10, 1966, Cozzalio with two other agents observed defendant's car parked near the apartment building. He obtained a key to defendant's apartment from the building manager. When he reached defendant's unit, he heard the television broadcast-

ing. He inserted the key into the lock so the agents could enter quickly if they had to. He then knocked loudly and called "Police officers" several times. When five or ten seconds had passed from the time Cozzalio called out, and he had heard no response, he unfastened the lock and broke open the door which had been secured by a night chain.

Defendant was found with about $130 cash in his hand. In the pocket of his sweater were seven balloons and a paper bindle. The balloons contained 7.18 grams of heroin. The bindle held .26 of a gram of heroin. Inside a glove-potholder, found above the stove, there were eyedroppers, a copper-colored measuring spoon, an hypodermic syringe, and two needles.

■ Defendant argues that the affidavit in support of the warrant failed to state facts indicating the source of the informant's knowledge and therefore the warrant was issued without the requisite probable cause. Where a search warrant is to be issued "solely on information from a reliable informant," the supporting affidavit must "disclose the source of the informant's knowledge so that the examining magistrate can himself determine whether probable cause exists for the issue of the warrant." (*People* v. *West,* 237 Cal.App.2d 801, 805 [47 Cal.Rptr. 341].)

In the case before us there is no explicit showing in the affidavit as to how the informant learned of the narcotics. However, the affidavit does state that the informant had "personal knowledge;" it goes no further. This lack of explication as to the nature of the informant's knowledge does not make the affidavit insufficient under *West, supra.* In that case, there was not even an averment that the informant had "personal knowledge." (*People* v. *West, supra,* 237 Cal.App.2d at p. 803, fn. 1.)

■ Furthermore, failure to state the character of the personal knowledge does not detract from the showing of probable cause. The existence of the informant's personal knowledge, without concern as to how it was obtained, can be implied from surrounding circumstances. (*People* v. *Hernandez,* 255 Cal.App.2d 478, 482 [63 Cal.Rptr. 133].) The affidavit before us is well within *Hernandez.* In addition to the statement of personal knowledge, there is a statement that the balloons of heroin were contained in a plastic bag. Indeed, the search of defendant's person revealed this to be true. This is persuasive evidence from which personal knowledge can be implied, thus corroborating the informant's statement of such knowledge. (See *People* v. *Hernandez, supra,* 255 Cal.App.2d

478.) We hold the search warrant was issued with probable cause and is valid.

█ Defendant cites as error the refusal of the trial court to allow him to discover through cross-examination of agent Cozzalio the title of pending cases in which the informant proved reliable. In support, defendant cites *Priestly* v. *Superior Court*, 50 Cal.2d 812 [330 P.2d 39]. In that case the Supreme Court granted a writ prohibiting the superior court from further proceedings on an information charging violations of Health and Safety Code, section 11500. Essential evidence in the case was the product of a search instituted, without warrant, upon a lead furnished by an informant of undisclosed identity. The court held that if such testimony is essential to sustain the legality of the search, the identity of the informant must be revealed to defendant in order that he may have a fair opportunity to rebut the officer's testimony bearing on legality. (*Priestly* v. *Superior Court, supra,* 50 Cal.2d at p. 818.)

This case does not support defendant's position. The rule just stated does not apply where the search is made under a warrant valid on its face. (Evid. Code, § 1042, subd. (b) ; *People* v. *Keener,* 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587].)

█ Defendant finally contends that the warrant was improperly executed because entry into the apartment was not in accord with the requirements of Penal Code, section 1531. That section reads: ''The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.'' Cozzalio was not ''refused admittance.'' He heard no response to his knocks and announcement of authority. Nor did he announce his purpose.

The People cite *People* v. *Villaneuva,* 220 Cal.App.2d 443 [33 Cal.Rptr. 811], as controlling. In that case police officers, fearing that possible incriminating evidence might be disposed of if they announced their presence pursuant to Penal Code, section 1531, kicked open the door of defendant's apartment and rushed in. They found 30 grams of 90 percent pure heroin. (P. 446.)

The court held the search to be proper, notwithstanding the failure to comply with Penal Code section 1531. They adopted the reasoning of *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6], which interpreted Penal Code section 844, a statute identi-

cal in principle to Penal Code section 1531 but concerned with arrest. Quoting *Maddox,* they stated: " 'Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he .is entitled to be more quickly than he would, had he complied with section 844. . . .' " (*People* v. *Villanueva, supra,* 220 Cal.App.2d at p. 448.)

The district court then summarized the evidence showing that the officers "had reason to believe that compliance with section 1531 would be futile and would permit the occupants to destroy incriminating evidence. Sergeant Fesler went to the apartment because of information received from a reliable source that a felony was being committed there. He testified that he believed that a demand for admittance would be futile because earlier in the day a salesman went to the door and knocked on it but received no response other than a voice from the inside calling to him. If the occupant, Miss Cabral, would not open the door for a salesman, it was not unreasonable to believe that she would not open the door for an officer had he made known to her 'his authority and purpose.' The fact that the occupants of the apartment had coated the windows with Bon Ami and tinfoil justifies the inference that they desired to maintain a high degree of secrecy as to what went on in their apartment. Sergeant Dorrell had participated in 50 to 100 narcotic arrests where an attempt had been made to destroy evidence. The officers believed that compliance with section 1531 would lead to the destruction of incriminating contraband. This proved to be a justifiable belief. The heroin seized was located on the lavatory cover which had been placed crosswise on the toilet bowl. Only a flick of the lever was necessary to send the heroin down the drain." (*Id.* at pp. 448-449.)

The court then stated that "the principles of *Maddox* remain unimpaired. By analogy, the failure of the officers under similar circumstances to observe the provisions of section 1531 would not violate any constitutional rights. It therefore follows that the entry of the officers was not illegal and that the evidence seized was admissible against defendants." (*Id.,* at p. 449.)

*Villaneuva,* however, does not give us a simple retort to defendant's contention. Its foundation, *Maddox,* has been chipped into recently. In *People* v. *Gastelo,* 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706], the court reversed a judgment

of conviction of possession of heroin because arresting officers, though armed with a valid warrant, failed to comply with the requirements of Penal Code, section 1531. They forced entry through front and rear doors without having knocked, announced their purpose, or demanded admittance. (*People* v. *Gastelo, supra* at p. 587.) Defendant and Donna Trujillo, whose apartment was raided, were asleep in the bedroom. The warrant was served and heroin was found between the mattress and box springs of the bed. (*Id.* at p. 587.)

In response to the Attorney General's contention "that unannounced forcible entry to execute a search warrant is always reasonable in narcotics cases," the court stated, "Neither this court nor the United States Supreme Court has held that unannounced forcible entries may be authorized by a blanket rule based on the type of crime or evidence involved." (*Id.* at p. 588.)

The court went on to distinguish *Maddox* and other cases sustaining conviction notwithstanding noncompliance with arrest or search statutes: "In *Maddox,* the officers knocked, heard a male voice call 'wait a minute' followed by the sound of retreating footsteps, and only then forced entry." (*Id.* at p. 588.)

The court explained its distinction: "Thus we have excused compliance with the statute in accordance with established common law exceptions to the notice and demand requirements on the basis of the specific facts involved. No such basis exists for nullifying the statute in all narcotics cases, and, by logical extension, in all other cases involving easily disposable evidence. The statute does not contain the seeds of such far-reaching self-destruction." (*Id.* at p. 588.)

Is the case before us within *Gastelo* and thus to be distinguished from the *Maddox-Villanueva* line of cases? The last quoted paragraph defines the determinative issue: Are there circumstances in this case which allow application of a common law exception to the requirements of Penal Code, section 1531?

▇ The common law rules are "that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose." (*People* v. *Maddox, supra* at p. 306.) ▇ There is no suggestion in the case before us that there would have been increased peril to the officers if they had strictly complied with the statute. However, Cozzalio testified, on the basis of past experience, that "if you call, 'Police officers,'

and the delay is over a minute, you might as well not go in because they are flushing it down the commode.'' He is saying that he did not wait for defendant to refuse admittance, as required by Penal Code section 1531, because he feared the arrest might be frustrated. This danger is always present in a narcotics arrest. Nevertheless, the Supreme Court has refused to give approval to blanket disregard of all or parts of Penal Code, section 1531. (*People* v. *Gastelo, supra,* 67 Cal.2d 586.) They cite prior cases in which there was justification for ignoring the statutes on arrest or search. The case before us does not compare with those cases. There was no response whatsoever, let alone the sound of retreating footsteps. (See *People* v. *Maddox, supra,* 46 Cal.2d 301.) There was no observation of suspicious movements following the knock. (See *People* v. *Carrillo,* 64 Cal.2d 387 [50 Cal.Rptr. 185, 412 P.2d 377].) There was no fresh pursuit of gun-wielding suspects. (See *People* v. *Smith,* 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222] ; *People* v. *Gilbert,* 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365].) Nor did the officers have cause to believe that defendant was armed with a gun and under the influence of heroin. (See *People* v. *Hammond,* 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289].)

The facts before us disclose no more danger of disposal of the evidence than is connoted by the nature of the evidence. Quite possibly defendant did not hear Cozzalio's call or even his knock due to the sound of the television. This inference is corroborated by Cozzalio's testimony that he observed defendant seated on the davenport when he entered the apartment. In view of the obvious desire of a narcotics offender to jettison his cargo of incriminating evidence, it would seem that defendant would have been on his way into, or already in, the bathroom if he had heard the call.

Since the decision in *Gastelo* was rendered, the Supreme Court has further evidenced its intent that, in the absence of justifiable necessity to the contrary, the letter of Penal Code, section 844, and, by analogy, Penal Code, section 1531, be adhered to. This most recent expression is *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], in which a judgment of conviction of possession of heroin was reversed because the incriminating evidence was the product of an unlawfully executed arrest.

Rosales was wanted by the Adult Authority because of parole violations. Also, police officers were informed that he

was arranging sales of heroin. Several police officers and a parole officer [not the parole officer of Rosales or his codefendant Berru] went to the house where defendants were staying in order to arrest them. "Officers Barbarick and Damerell [the parole agent] went to the front door, and the other officers covered the back of the house. Before entering, one officer saw Berru through a front bedroom window and another officer saw defendant through the front screen door. Defendant was sitting on a couch with his back to the door. Officers Barbarick and Damerell quickly entered the house and accosted defendant. Just before they arrested defendant they passed a girl and told her that they were police officers but they did not announce their purpose or demand entry before going into the house." (*People* v. *Rosales, supra* at p. 301.)

The court held that the failure of the officers to explain their purpose and demand admittance, as required by Penal Code, section 844, was fatal to the legality of the arrest. (*Id.* at p. 302.) The mere announcement to the girl that they were police officers was not sufficient compliance with the statute. "That section requires that an officer explain his purpose before demanding admittance, not merely that he identify himself as an officer." (*Id.* at p. 302.)

It is unchallenged in the case before us that Cozzalio did not fully comply with Penal Code, section 1531. He did not announce his purpose, nor was he refused admittance. (This refusal is required by Penal Code, section 1531, but not by Penal Code, section 844.) The Supreme Court has clearly established that variance from Penal Code, sections 844 and 1531, will be tolerated only in the exceptional situation. As shown above, this case is not the exceptional situation.

The judgment is reversed.

Pierce, P. J., and Friedman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 11, 1968.