3 Cal.3d 992 (1971)
479 P.2d 664
92 Cal. Rptr. 304
THE PEOPLE, Plaintiff and Appellant,
v.
JOY HALL et al., Defendants and Respondents.
Docket No. Crim. 14307.
Supreme Court of California. In Bank.
January 29, 1971.
*994 COUNSEL
Thomas C. Lynch, Attorney General, Nelson P. Kempsky and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Appellant.
Colley & McGhee and Milton L. McGhee for Defendants and Respondents.
OPINION
McCOMB, J.
Defendants, Joy Hall and Vernon White, were jointly charged by information with one count of possession for sale of heroin, and Miss Hall was additionally charged with one count of sale of heroin (Health & Saf. Code, §§ 11500.5, 11501). At the preliminary hearing defendants' motion to dismiss was denied and they were held to answer. They moved in the superior court to set aside the information pursuant to section 995 of the Penal Code. The People appeal from the order of dismissal.
Evidence was presented to the magistrate at the preliminary hearing that Narcotics Officer Cozzalio, together with other officers, arrested defendants without a warrant and seized material evidence after a forcible entry of a motel room under the following circumstances. Prior to February 7, 1968, Cozzalio had information from reliable undisclosed informants that Miss Hall was trafficking in heroin and was bringing it to Sacramento, California, from Klamath Falls, Oregon. On February 7, 1968, with the assistance of an untested operative named Willie Williams, Cozzalio made arrangements with Miss Hall, who was then using the name "Britton," to purchase from her in Sacramento an ounce of heroin for $575. Miss Hall was to contact Williams about 4 p.m. that day, and the latter promised to contact Cozzalio. Shortly before 4 p.m. Williams notified Cozzalio that Miss Hall had been delayed but would be in later that night. About 10:30 p.m. Williams informed Cozzalio that he had made another contact with Miss Hall and was to meet her within the half hour *995 at a designated service station in Woodland. Cozzalio and Williams were late in arriving. Cozzalio observed Miss Hall's car leaving just as they reached the service station. Later that evening Cozzalio observed Williams and a narcotics agent enter a bar where Miss Hall was supposed to be. Cozzalio saw Miss Hall come out of the bar but did not see Williams and Miss Hall together. Cozzalio then advised Williams that since it was getting late and the officers wanted to observe everything that occurred they were calling off the transaction for that evening.
The next morning Cozzalio ascertained that Miss Hall was staying in room 111 at a certain motel in Sacramento. About 10 a.m. Williams and his car were searched, Williams was provided with $600 of recorded money and Williams drove to the motel. He parked alongside Miss Hall's car in front of room 111. He and his car were under constant observation from the time he was originally searched until he entered room 111 and after his exit from that room until, several blocks away, he handed Cozzalio a rubber contraceptive containing heroin. He and his car were then searched. Neither the $600 nor other narcotics were found on him or in his car.
Meanwhile room 111 had been kept under constant surveillance. No one else had entered or left. After receiving the heroin, Cozzalio talked to the manager of the motel, showed him a picture of Miss Hall, and was informed that she was registered in room 111 under the name of "Olemphia Jackson" from Klamath Falls. Cozzalio obtained a key from the manager, went to room 111, inserted the key in the lock, pounded on the door and announced "Police Officers." Immediately thereafter Cozzalio heard a woman within the room start screaming. He then turned the key, opened the door until it was stopped by a night chain, observed a man, defendant White, sitting on a chair near the door, broke the door chain, and entered the room.
Cozzalio informed both occupants that they were under arrest and advised them of their rights. Miss Hall was unclothed. Defendant White was clothed, and search of his person revealed a.32 automatic in his waistband. Search of a purse, found on the floor next to the dresser and identified by Miss Hall as belonging to her, revealed $600 with serial numbers matching those on the state money given to Williams. When asked if the money was hers, she replied "Yeah, it's mine, but I didn't steal it." Search of the adjoining bathroom revealed a packet of heroin concealed within the folds of a towel.[1]
Defendants urged in support of their motion to dismiss complaints at the preliminary hearing and again on their motion to dismiss the information *996 at the section 995 hearing that there was no reasonable or probable cause to arrest or search either defendant because the arrest was made on evidence received from an untested informer, in violation of their Sixth Amendment right of confrontation; that the only evidence against defendant White was his presence in the room where heroin was found; and that no circumstances were shown excusing strict compliance with section 844 of the Penal Code in making a forcible entry into the motel room (citing People v. Rosales (1968) 68 Cal.2d 299, 302 [66 Cal. Rptr. 1, 437 P.2d 489]; People v. Gastelo (1967) 67 Cal.2d 586, 589 [63 Cal. Rptr. 10, 432 P.2d 706], and People v. Cain (1968) 261 Cal. App.2d 383 [67 Cal. Rptr. 922]), and therefore they were deprived of their Fourth Amendment right to be secure in their homes from unreasonable police action.
(1) An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (Rideout v. Superior Court (1967) 67 Cal.2d 471, 474 [62 Cal. Rptr. 581, 432 P.2d 197].) "On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated." (People v. Jablon (1957) 153 Cal. App.2d 456, 459 [314 P.2d 824].) (2, 3) Neither the trial court in a section 995 proceeding (People v. Landry (1964) 230 Cal. App.2d 775, 779 [41 Cal. Rptr. 202]; Hacker v. Superior Court (1968) 268 Cal. App.2d 387, 392-393 [73 Cal. Rptr. 907]) nor a reviewing court on appeal therefrom (Rideout v. Superior Court, supra, 67 Cal.2d at p. 474; People v. Cirilli (1968) 265 Cal. App.2d 607, 612-613 [71 Cal. Rptr. 604]) may substitute its judgment as to the weight of the evidence for that of the committing magistrate. "Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order." (Perry v. Superior Court (1962) 57 Cal.2d 276, 283-284 [19 Cal. Rptr. 1, 368 P.2d 529].) (4) Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (Rideout v. Superior Court, supra, 64 Cal.2d 474.) In the light of these rules we examine the issues here raised.

(5) Questions: One. Was there reasonable or probable cause to arrest defendants without a warrant?

Yes. The narcotics officer's suspicions that Miss Hall was trafficking in heroin had been aroused by reliable tested informants. Williams was not *997 known to the officer until February 7, 1968, but the reliability of his information was corroborated by the officer's own observations prior to the arrest. Miss Hall's car had been seen leaving a named place by the officer who arrived late for the pre-arranged meeting; she was seen leaving a named place that evening; she was found to be registered at a named motel the next morning; she was found to have registered under an assumed name and to be in room 111; Williams had been seen entering room 111 with recorded money and without heroin; and he was seen leaving that room without the money and with heroin. While defendant White's presence was not known to the officers until after they entered, the officers could reasonably conclude that persons inside the room when the sale took place had knowledge of the sale and were in constructive possession of heroin for sale. There was therefore a state of facts sufficient to lead Cozzalio, as a person of ordinary caution and prudence, to believe and conscientiously entertain a strong suspicion that a felony (sale of heroin) had just taken place and that a felony (possession of heroin for purposes of sale) was being committed and that there was probable cause for the arrest. (See People v. Benjamin (1969) 71 Cal.2d 296, 303 [78 Cal. Rptr. 510, 455 P.2d 438]; People v. Berutko (1969) 71 Cal.2d 84, 90-91 [77 Cal. Rptr. 217, 453 P.2d 721]; People v. Sandoval (1966) 65 Cal.2d 303, 307 [54 Cal. Rptr. 123, 419 P.2d 187].)

(6a) Two. Did the officer's failure to announce the purpose for which he demanded admittance vitiate the arrest and search which followed?

No. The arresting officer substantially complied with section 844 of the Penal Code[2] under the particular circumstances shown. He gave notice of his demand for entrance through knocking and he identified himself as a police officer. (See Greven v. Superior Court (1969) 71 Cal.2d 287, 293 [78 Cal. Rptr. 504, 455 P.2d 432].) He did not expressly announce that his purpose was to make an arrest. "[I]dentification alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile." (People v. Rosales, supra, 68 Cal.2d at p. 302.) (7) Where a criminal offense has just taken place within a room, the occupants may reasonably be expected to know the purpose of the police visit and an express statement of purpose may not be necessary. (People v. Cockrell (1965) 63 Cal.2d 659, 665-666 [47 Cal. Rptr. 788, 408 P.2d 116]; People v. Martin (1955) 45 Cal.2d 755, 762-763 [290 P.2d 855]; People v. Superior Court (1969) 274 Cal. App.2d 578, *998 581 [79 Cal. Rptr. 55]; see also People v. Nash (1968) 261 Cal. App.2d 216, 226 [67 Cal. Rptr. 621].)
(6b) No entry was made by Cozzalio or his fellow officers until after their identity as police officers was made known to the occupants, the purpose for entry was reasonably understood by the occupants, and a response from the occupants was heard by the officers (see People v. Lopez (1968) 269 Cal. App.2d 461, 465 [74 Cal. Rptr. 740]).
This situation is distinguishable from that considered in People v. Rosales, supra, 68 Cal.2d 299, People v. Gastelo, supra, 67 Cal.2d 586, and People v. Cain, supra, 261 Cal. App.2d 383, relied on by defendants. In Rosales and Gastelo entry was made without any attempt to comply with section 844 or its counterpart section 1531; because the officers gave no notice of their authority and made no demand for admittance prior to entry, there could have been no substantial compliance[3] with the relevant section. (Greven v. Superior Court, supra, 71 Cal.2d 287, 293.) In Cain the officer identified himself and demanded admittance prior to entry, but there was no indication that the occupant heard the announcement and the officer entered within 10 seconds, giving little or no opportunity for response. (Cf. People v. Benjamin, supra, 71 Cal.2d 296, 298 [78 Cal. Rptr. 510, 455 P.2d 438].) Moreover, in Cain the circumstances were not such that the defendant could have been expected to know the officer's purpose.
A different situation is presented here. There were specific circumstances shown why the occupants of room 111 should have been on guard against imminent police action; there was no evidence from which it could be inferred that the knock and announcement had not been heard; and there was a response  namely, the sound of a woman screaming. The screams could reasonably be held to indicate that the occupants had, in fact, heard the knock and identification by the officer. The officer could reasonably believe that the screams were a prearranged signal of police arrival and that contraband would be destroyed or an escape would be attempted. It would not be unreasonable to believe that the screams signified danger to the person screaming. (See People v. Roberts (1957) 47 Cal.2d 374 [303 P.2d 721].) While the screams were continuing, he could have considered that it was futile to make further efforts to comply with section 844, and there was no rule which required that he wait patiently at the door until the screams subsided.
*999 From the evidence adduced at the preliminary hearing it appears that the magistrate reasonably concluded that the arrest was lawful, that entry in the manner shown was in substantial compliance with section 844, that there was no unreasonable invasion of defendants' right of privacy, and that the contraband was properly seized. There was reasonable or probable cause for the commitment and the information should not have been set aside.
The order granting the motion setting aside the information is reversed.
Wright, C.J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.
NOTES
[1] The search was prior to June 23, 1969, and not restricted by Chimel v. California (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. (People v. Edwards (1969) 71 Cal.2d 1096, 1107 [80 Cal. Rptr. 633, 458 P.2d 713].)
[2] Section 844 provides, in pertinent part, that "To make an arrest ... a peace officer, may break open the door or window of the house in which the person to be arrested is, ... after having demanded admittance and explained the purpose for which admittance is desired."
[3] Substantial compliance with the knock and notice rule set forth in sections 844 and 1531 is to be distinguished from excused noncompliance. The former can occur only when, as in the instant case, there has been some attempt to comply. The latter can occur in cases wherein the attempt to comply falls short of substantial compliance and also in cases like Rosales and Gastelo wherein there has been no attempt to comply. (See Greven v. Superior Court, supra, 71 Cal.2d 287, 291-295.)