[No. B022338. Second Dist., Div. Five. Sept. 11, 1986.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MITCHELL CARLTON SIMS et al., Real Parties in Interest.

472

**COUNSEL**

Ira Reiner, District Attorney, Harry B. Sondheim and Maurice H. Oppenheim, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Morton P. Borenstein and Victor Salerno, Deputy Public Defenders, for Real Parties in Interest.

## OPINION

**FEINERMAN, P. J.**—Defendants (real parties) Mitchell Sims (Sims) and Ruby Padgett (Padgett) are awaiting trial on charges of murder, attempted murder and robbery stemming from the killing of a Domino's Pizza delivery man and the robbery of a Domino's store in Glendale. Accompanying the murder charge are two special circumstance allegations that the murder was committed during the course of a robbery (Pen. Code, § 190.2, subd. (a)(17)(i)) and was committed while lying in wait (Pen. Code, § 190.2, subd. (a)(15)). After a preliminary hearing, defendants were held to answer on all charges, including the special circumstance allegations. Defendants' motion (Pen. Code, § 995) to set aside the special circumstance allegations and the attempted murder charges was denied as to the robbery special circumstance and the attempted murder counts,[1] but granted as to the lying in wait special circumstance allegation. By this petition, the People seek to have the lying in wait allegation reinstated. For the reasons hereinafter set forth, we grant the petition.

### FACTS[2]

Defendants are accused of murdering John Harrigan (Harrigan) as he delivered a pizza to their motel room. The killing occurred late on the evening of December 9, 1985. Domino's Pizza received a phone order at 11:03 p.m. At 11:25 p.m., Harrigan left to deliver the order to a room at the Regalodge Motel, which was later determined to have been occupied by defendants. The motel was approximately one mile from the Domino's store—a distance that could be driven in five minutes.

At 11:45 p.m., the defendants arrived at the Domino's store. Harrigan had still not returned. Sims robbed the two remaining employees, after which he locked them in the cooler. One employee, Kelly Spiroff, mentioned that Harrigan was due back from a delivery and Sims replied, "I don't think

---

[1] Defendant Sims sought a writ of prohibition with respect to the portion of his Penal Code section 995 motion which was denied. His petition was denied by this court on July 31, 1986.

[2] The court has reviewed the preliminary hearing transcript, including the in camera portion of the hearing held on May 2, 1986. We recite only those facts necessary to a determination of this petition.

so," displaying a Domino's uniform shirt which he was wearing under his sweater.

Harrigan's body was later found in the bathroom of defendant's motel room. He had been gagged and his wrists and feet had been bound together behind his body. The body was lying in a bathtub full of water.

## DISCUSSION

■ The respondent court concluded that the evidence was insufficient to hold defendants to answer on the special circumstance allegation that the murder was committed while lying in wait. This determination is a legal conclusion which is subject to independent review by this court. (*People* v. *Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].) Our function is to determine whether a person of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion that the defendant committed the crime charged. (*Ibid.*) ■ Based upon our independent review of the record, we conclude that there was sufficient evidence to hold defendants to answer on the lying in wait special circumstance allegation.

Penal Code section 190.2, subdivision (a)(15) provides that the penalty shall be death or confinement for a term of life without the possibility of parole in any case of first degree murder when there has been a finding that "[t]he defendant intentionally killed the victim while lying in wait." This and other "special circumstance" provisions of the Penal Code were added to the code by the 1978 Death Penalty Initiative (popularly known as the Briggs Initiative). Prior to the Briggs Initiative, a defendant also could have been convicted of first degree murder if the murder was "perpetrated by means of lying in wait." (Former Pen. Code, § 189.)

While "perpetrated by means of" represents only a slight semantic difference from "while," the difference was not lost on the first court to interpret new Penal Code section 190.2, subdivision (a)(15). The court seized upon the word "while" to conclude that "the killing must take place during the period of concealment and watchful waiting or the lethal acts must begin at and flow continuously from the moment the concealment and watchful waiting ends. If a cognizable interruption separates the period of lying in wait from the period during which the killing takes place, the circumstances calling for the ultimate penalty do not exist." (*Domino* v. *Superior Court* (1982) 129 Cal.App.3d 1000, 1011 [181 Cal.Rptr. 486].) In *Domino,* the court dismissed a lying in wait allegation where the victim was *captured* during the period of lying in wait, but he was not *killed* until at least one hour and possibly five hours later.

In *Richards* v. *Superior Court* (1983) 146 Cal.App.3d 306 [194 Cal.Rptr. 120], the court, relying on *Domino,* dismissed a lying in wait special circumstance allegation where the victim was lured to a certain location, stabbed in the heart, and dealt a blow to the left rear portion of his head resulting in a fractured skull. Accepting the defendant's argument that there was "no evidence in the record showing the precise manner in which the murder occurred, and hence no basis for concluding that [the victim's] assailants approached him from physical concealment after 'watchful waiting,'" (146 Cal.App.3d at p. 314), the *Richards* court held that there was insufficient evidence to hold the defendant to answer on the lying in wait special circumstance allegation.

Here, the respondent court, relying particularly on *Richards,* struck the lying in wait special circumstance allegation because "no precise moment as to when the victim died was given." The scenario of the crime, as viewed by the respondent court, was that "the victim was, first of all, robbed at gunpoint. There was a discussion between the defendant and the victim during the course of the robbery, and then the bounding and gagging, the bathtub scene arises."

■ The court's conclusion does not comport with the long-established rule that every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664.) ■ In this case, we must determine whether there is "some rational ground for assuming the possibility" that the defendants intentionally killed the victim while lying in wait. (*Domino* v. *Superior Court, supra,* 129 Cal.App.3d at p. 1006, citing *Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 955 [153 Cal.Rptr. 720].)

The evidence here, viewed in a light most favorable to the information, presents a textbook case of lying in wait. The victim left Domino's at approximately 11:25 p.m. and the defendants appeared at Domino's at approximately 11:45 p.m. Allowing for five minutes of travel time each way, the entire sequence of events—the robbery, the meticulous binding of Harrigan's hands and feet, and the transportation of his body to the bathtub—could not have consumed more than ten minutes. The evidence gives rise to the inference that Harrigan was lured to the defendants' motel room, ambushed upon his entry into the room, robbed, then carefully bound, gagged, and left to drown in a bathtub full of water. Unlike *Domino* and *Richards,* there was no cognizable interruption to separate the period of lying in wait from the period during which the killing occurred. The precise moment of the victim's death is not the determinative factor here, since the killing appears to have been accomplished in a manner designed to insure a slow death. The appropriate inquiry in the case at bench is whether the

acts which ultimately caused Harrigan's death took place "during, or at least immediately following, some period of watchful waiting from concealment." (*Richards* v. *Superior Court, supra,* 146 Cal.App.3d at p. 313.) The only reasonable inference which may be drawn from the evidence is that they did.

Let a peremptory writ of mandate issue directing the respondent court to vacate that portion of its order of July 8, 1986, granting the motion of defendants Mitchell Carlton Sims and Ruby Carolyn Padgett to set aside the special circumstance allegation of murder committed while lying in wait (Pen. Code, § 190.2, subd. (a)(15)), and enter a new and different order denying said motion, in that matter entitled People of the State of California v. Mitchell Carlton Sims and Ruby Carolyn Padgett, Los Angeles Superior Court case No. A-591707.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied September 23, 1986, and the petition of real party in interest Sims for review by the Supreme Court was denied December 11, 1986.