Filed 7/30/13  P. v. Norton CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY DANIEL NORTON,<br><br>        Defendant and Appellant. | A123659<br><br>(Solano County<br>  Super. Ct. No. FCR259410) |

Appellant Jeffrey Daniel Norton entered a plea of no contest to the felony offense of corporal injury to a cohabitant and was sentenced to the low term of two years (Pen. Code, § 273.5, subd. (a)).[1]  On appeal Norton sought reversal of his conviction on the ground the evidence against him was the product of a warrantless search that violated his Fourth Amendment rights.  In our prior opinion, we affirmed the conviction, as we concluded the evidence was lawfully obtained under the emergency aid exception to the warrant requirement.  In this opinion, our conclusion remains unchanged.

At sentencing on December 17, 2008, the trial court awarded Norton 127 days of presentence credit, consisting of 85 days of actual time in local custody and 42 days of conduct credit under the version of section 4019 that was then in effect.  In October 2009, during the pendency of Norton's appeal, the Legislature amended section 4019 to afford additional presentence conduct credit to qualified prisoners.  (Stats. 2009-10 (3d Ex. Sess.), ch. 28, § 50.)  This amendment became operative on January 25, 2010, after

---

[1]        All further statutory references are to the Penal Code unless otherwise specified.

1

submission of Norton's appeal but before it was decided. The next day, Norton filed a supplemental brief asking this court to vacate the submission to consider his entitlement to an additional 42 days of presentence conduct credit under the January 25, 2010 version of section 4019. We vacated the submission and requested supplemental briefing from the Attorney General on this issue. The Attorney General complied with our request, contending in a supplemental brief that Norton was not entitled to additional conduct credit because the January 25, 2010 version of section 4019 did not apply retroactively.

We previously agreed with Norton and concluded he was entitled to additional presentence conduct credit, as we concluded the January 25, 2010 version of section 4019 should be given retroactive effect. We remanded the matter to the trial court with instructions to amend the abstract of judgment to reflect the additional credit to which Norton was entitled and to deliver a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The California Supreme Court granted the Attorney General's petition for review in this case. On May 15, 2013, the Supreme Court transferred this matter back to this court with directions to vacate our prior decision and reconsider the cause in light of *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*). After remand, the parties could have filed supplemental briefs (Cal. Rules of Court, rule 8.200(b)), but chose not to do so. The Supreme Court in *Brown* concluded the January 25, 2010 version of section 4019 did not apply retroactively to a defendant, like Norton, who committed his offenses prior to the statute's operative date, and a prospective application of the statute did not violate a defendant's equal protection rights. (*Brown, supra,* 54 Cal.4th at pp. 325-328, 328-330.) Because we are bound by the *Brown* decision (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), we vacate our prior decision and now hold that Norton is not entitled to additional presentence conduct credit pursuant to the January 25, 2010 version of section 4019. Accordingly, we shall affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In September 2008, the district attorney filed a criminal complaint against Norton alleging the felony offenses of corporal injury on a cohabitant (§ 273.5, subd. (a)) and

2

criminal threats (§ 422), and misdemeanor offense of battery against a cohabitant (§ 243, subd. (e)(1)). Norton moved to suppress all the evidence against him on Fourth Amendment grounds (§ 1538.5).

The following evidence was presented at the preliminary hearing before a superior court judge sitting as a magistrate (the magistrate). Norton had been dating M.D. for six months and stayed periodically at her apartment. On September 24, 2008, at approximately 11:30 p.m., M.D. called police to report that her boyfriend was vandalizing her car. Fairfield police officers Jeremy Nipper and Chad Rowlett were dispatched to her residence and arrived within five minutes of her call. Officer Nipper did an area check but saw no one on the street and decided to obtain additional information from M.D. After the officer knocked on the door of M.D.'s apartment five or six times, Norton answered the door. Norton appeared agitated and said, "What the fuck do you want?" When Officer Nipper asked if M.D. was in the apartment, Norton claimed she was asleep inside. The officer looked past Norton into the apartment, but could not see anyone, as the apartment was dark.

Officer Nipper testified that he became concerned about M.D.'s welfare "because I couldn't see her . . . [and] [Norton] was in an agitated state." The officer explained: "She had called about a vandalism, and the person responsible was her boyfriend. Upon contact, trying to get additional information as to his whereabouts, he answers the door, and that just raises my suspicion as to her welfare not knowing what had taken place prior to her reporting this vandalism or what could have occurred." Accordingly, after asking Norton to step outside and sit on the porch, Officer Nipper called into the apartment for M.D., but she did not respond. As the officer continued to call into the apartment, Norton grew more and more agitated, believing police were going inside. Norton asked why the officers were there, why they needed to go inside the apartment, and why they wanted to talk to M.D. As Norton's agitation mounted, he stopped complying with the direction to sit still and remain on the porch, so the officers handcuffed him to ensure their own safety. Officer Nipper noted a strong odor of alcohol on Norton.

Receiving no response from M.D., Officer Nipper called for backup so he and Officer Rowlett could go inside the apartment without leaving Norton unattended. While awaiting backup, Officer Nipper continued to call out for M.D., but she did not respond. Backup arrived within five minutes, and Officer Nipper entered M.D.'s apartment with Officer Rowlett. Officer Nipper discovered M.D. in the rear bedroom, crouching behind the bed where her young children were sleeping. Her legs were covered in bruises, and she appeared nervous and scared. She wanted to know where Norton was and did not want him to hear her talking to the officers. After Officer Nipper assured M.D. that Norton was outside with other officers, she explained that Norton had been drinking for the past few days and assaulted her numerous times during this period, hitting and kicking her repeatedly. M.D. said Norton told her during an argument, "Try driving off— or try driving off now or try starting [your car] now." Believing he had vandalized her car, M.D. called the non-emergency number for police. She said she was afraid of Norton because he told her, "If you call the police, I'll fucking kill you."

The magistrate denied Norton's motion to suppress M.D.'s statements, the officers' observations regarding her physical condition, and her testimony, which Norton characterized as "exploitation of the illegal entry to the residence." The magistrate found that M.D.'s vandalism call implicating her boyfriend was "an inherently suspicious circumstance all by itself about what's going on at that moment [in] the relationship between these two parties." The magistrate observed, further, that within five minutes of the call, Officer Nipper was confronted at the door by Norton with an "inherently pugnacious" response and obvious agitation. Noting Norton's increasing agitation as Officer Nipper called into the apartment, and the officer's inability to see or obtain a response from M.D., the magistrate concluded, "[A]ll of that adds up to an exigent circumstance that authorizes at that moment the officer to do a welfare check inside the house under the officer's community caretaking function." The magistrate held Norton to answer on all three counts and added another count of corporal injury on a cohabitant based on M.D.'s testimony. Norton was charged accordingly, in an information that also asserted two prior convictions for which he had served prior prison terms as sentence

4

enhancements. He entered a plea of not guilty on all counts and denied the enhancement allegations.

In the trial court, Norton moved to set aside the information on Fourth Amendment grounds (§ 995), effectively seeking review of the magistrate's ruling regarding the validity of the search. Norton contended he had been committed without probable cause, as the only evidence against him was the product of an unconstitutional search. The trial court denied the motion. Thereafter, Norton pleaded no contest to one count of corporal injury to a cohabitant (§ 273.5, subd. (a)), and the remaining counts and enhancement allegations were dismissed under the plea agreement. On December 17, 2008, the trial court sentenced Norton to the low term of two years and awarded him 127 days of conduct credit, consisting of 85 actual days and 42 conduct credits under former section 4019, which was in effect at that time. He filed a timely notice of appeal from the judgment of conviction.

## DISCUSSION

### I.      The Evidence Against Norton was the Product of a Lawful Search

The validity of a police search is reviewable on appeal from a conviction entered after a plea of no contest if the defendant raised the issue in the trial court. (*People v. Hobbs* (1994) 7 Cal.4th 948, 956, applying § 1538.5, subd. (m); *People v. Lilienthal* (1978) 22 Cal.3d 891, 896 (*Lilienthal*).) To satisfy this requirement, a defendant whose motion to suppress evidence is denied at the preliminary hearing must renew his section 1538.5 motion at a special hearing in the trial court (§ 1538.5, subd. (i)) or move to set aside the information (§ 995) on Fourth Amendment grounds. (*Lilienthal*, *supra*, at p. 896.) As Norton raised the search issue in the trial court in his section 995 motion, we consider the lawfulness of the officer's search in that context. [2] (See *Lilienthal*, *supra*, at pp. 896-897.)

_____

[2]      Norton purports to appeal from the denial of his motion to suppress evidence (§ 1538.5) and mistakenly asserts the standard of review applicable to such motions when they are heard initially in the trial court. (See *People v. Glaser* (1995) 11 Cal.4th 354,

In evaluating assertions of error under section 995, we effectively disregard the trial court's ruling and directly review the magistrate's decision holding the defendant to answer. (*People v. Laiwa* (1983) 34 Cal.3d 711, 718, superseded by statute on other grounds as stated in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223; *People v. Prance* (1991) 226 Cal.App.3d 1525, 1530.) We limit our analysis to the evidence presented at the preliminary hearing (*People v. Sahagun* (1979) 89 Cal.App.3d 1, 20), and will not set aside the information "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*People v. Hall* (1971) 3 Cal.3d 992, 996.) Our determination of whether such a rational ground exists in this case depends on whether evidence essential to the charges against Norton was the product of an unconstitutional search. (*Lilienthal*, *supra,* 22 Cal.3d at p. 897.) As the magistrate's findings of fact are undisputed, we consider the validity of the search independently, " 'measur[ing] the facts . . . against the constitutional standard of reasonableness.' " (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.) The magistrate upheld the search in this case under the exigent circumstances exception, [3] but we are not bound by his reasoning. (*Id.* at p. 530.) We affirm the trial court's ruling if it is correct on any theory of the law. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

In determining whether the evidence against Norton was obtained lawfully, we must consider whether a recognized exception to the warrant requirement justifies the officer's warrantless entry into M.D.'s apartment. The People do not dispute that Norton was an overnight guest at M.D.'s apartment and therefore had a reasonable expectation of privacy in the residence. (See *Minnesota v. Olson* (1990) 495 U.S. 91, 99 [overnight guests have reasonable expectation of privacy in the host's home]; *People v. Ayala* (2000) 23 Cal.4th 225, 255 [showing required for standing under the Fourth

---

361-362; cf. *People v. Thompson* (1990) 221 Cal.App.3d 923, 940 [standard of review when the motion to suppress is brought first at the preliminary hearing].)

[3] When asked whether he was relying on the exception for exigent circumstances or recognizing a community caretaking exception, the magistrate clarified, "This is an exigent circumstances entry."

Amendment].) The Fourth Amendment generally permits state intrusion into areas in which a citizen has a reasonable expectation of privacy only with his consent or the issuance of a warrant. (*People v. Morton* (2003) 114 Cal.App.4th 1039, 1046.) Here, the officer had neither. Entry into a home without a warrant is presumed unreasonable, but this presumption may be overcome by a showing that an exception to the warrant requirement applies. (*People v. Ormonde* (2006) 143 Cal.App.4th 282, 291 (*Ormonde*), citing *Payton v. New York* (1980) 445 U.S. 573, 586 and *Katz v. United States* (1967) 389 U.S. 347, 357.)

We conclude that the emergency aid exception recognized in *Brigham City v. Stuart* (2006) 547 U.S. 398 (*Brigham City*) justifies the warrantless entry in this case. [4] In *Brigham City*, the court held that "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." (*Id.* at p. 403.) In applying this exception, the question remains one of reasonableness: whether the officer had " 'an objectively reasonable basis for believing,' [citation], that 'a person within [the house] [was] in need of immediate aid.' " (*Fisher*, *supra*, 558 U.S. at p. 47; see *id.* at p. 49 ["whether there was 'an objectively reasonable basis for believing' that medical assistance was needed, or persons were in danger"].) As Norton concedes, the standard for applying the emergency aid exception is "fairly forgiving" and requires a lesser showing than probable cause. (See *People v. Ray* (1999) 21 Cal.4th 464, 475-476 (*Ray*).) As with any police search, an officer relying on this exception must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." (See *Terry v. Ohio* (1968) 392 U.S. 1, 21.)

---

[4] The parties did not expressly address the emergency aid exception in their initial briefing. After we heard oral argument in this case, the United States Supreme Court decided *Michigan v. Fisher* (2009) 558 U.S. 45 (*Fisher*), which upheld a police search under the emergency aid exception recognized in *Brigham City*. We ordered the parties to submit supplemental briefing addressing the impact of *Fisher* on our analysis. (See Gov. Code, § 68081.) The parties promptly submitted letter briefs in accordance with our order.

The facts in this case demonstrate that the officer's entry was reasonably warranted under the emergency aid exception. M.D.'s call to police suggested that she was in a volatile relationship and her boyfriend lacked control and appropriate boundaries in expressing his anger. This call gives context to the circumstances the officer confronted when he responded to her residence:

- The officers arrived at M.D.'s home within five minutes of her call;

- The boyfriend M.D. had implicated in the vandalism of her car (Norton) answered her door;

- He was in an agitated, intoxicated state and confronted the officers in a belligerent manner;

- M.D. was not visible from the doorway and did not respond when the officer called out to her repeatedly over a ten minute period;

- Norton claimed M.D., who had called police only minutes earlier, was asleep inside; and

- Norton became increasingly agitated at the prospect police would enter the apartment.

An officer arriving minutes after M.D.'s call to the police could reasonably find her absence unusual and reject Norton's implausible claim that she was asleep. When viewed in light of her vandalism allegations, Norton's aggressive, agitated state, and his dishonesty regarding her whereabouts, M.D.'s continuing failure to respond provided the officer with reasonable cause for alarm. In these circumstances, it is not unreasonable to conclude that Norton had not stopped with the destruction of M.D.'s property and had turned his anger on M.D. herself. [5] We find, accordingly, that an objectively reasonable

---

[5]    Citing *Ormonde*, Norton contends "there is no 'domestic violence exception to the warrant requirement' " and the mere possibility of domestic violence is not enough to justify a warrantless entry of a home. In discussing domestic violence, the court in *Ormonde* noted that "the seriousness of the offense does not, by itself, give rise to an exigent circumstance," observing, "[e]ven a homicide does not warrant a blanket exception to the Fourth Amendment on that basis." (*Ormonde*, *supra*, 143 Cal.App.4th at p. 291.) Our holding does not rest, however, on the seriousness of the offense suggested

basis exists for believing that M.D. had been injured, that her injuries were serious enough to render her incapable of responding to police, and that she was in immediate need of aid.

Norton contends that case decisions addressing the emergency aid exception demonstrate that it does not apply here.  He argues (1) that the facts in this case are akin to those in *Ray, supra,* 21 Cal.4th 464, which were deemed insufficient to invoke the exception, and (2) that *Fisher* and *Brigham City*, which applied the exception, are distinguishable on factual grounds.  We are not persuaded by these contentions.

First, the officers in *Ray* did not know if anyone was inside the residence (21 Cal.4th at p. 468) and they had "no knowledge of any facts that would lead a reasonable person in their position to believe entry was immediately necessary to aid life or limb" (*id*. at p. 473). [6]  Here, by contrast, the officer knew of a specific person inside the apartment and could reasonably conclude, based on the facts known to him, that she had suffered serious bodily injury, requiring immediate assistance.

Second, we do not find the factual distinctions in *Fisher* and *Brigham City* significant, as the emergency aid exception requires only a factual showing of reasonableness, a conclusion that finds support in the record before us.  Norton argues that *Fisher* was "overflowing" with facts suggesting a recent injury and set forth "a far richer body of objective evidence" in this regard than the facts here.  He also notes that in both *Brigham City* and *Fisher,* the officers observed violent behavior inside the home, while Officer Nipper did not.  Although the facts in this case do not mirror those found in

---

by M.D.'s call to police, but on the totality of the circumstances confronting the officer. *Ormonde* does not preclude an officer from considering the possibility of domestic violence in evaluating whether an injured occupant requires immediate aid.

[6]     The front door of the house had been open all day and the front room was in shambles, as if it had been ransacked.  (*Ray*, *supra*, 21 Cal.4th at p. 468.)  The officers entered " 'to see if anyone inside might be injured, disabled, or unable to obtain help' and to determine whether a burglary had been committed or was in progress."  (*Ibid.*)  At best, these facts suggest that a crime may have been committed, and that "someone might have been inside."  (*Ibid.*)

*Brigham City* and *Fisher*,[7] the record here clearly meets the standard articulated in those cases.  Neither *Brigham City* nor *Fisher* held that the emergency aid doctrine requires conclusive evidence of a recent injury or direct observation of violence inside the home.  On the contrary, *Fisher* makes clear that "[o]fficers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." (*Fisher*, *supra*, 558 U.S. at p. 49.)  Norton concedes this point, but contends that there must be " 'specific and articulable facts indicating the need for swift action to prevent imminent danger to life,' and not merely supposition or guesswork." (*Ray*, *supra*, 21 Cal.4th at pp. 475-476.)  He argues that, in this case, the evidence shows the officer's entry was based on "a totally speculative concern about an injured party," "vague hunches[, and] ineffable anxieties about the potential for injury."  We disagree.  In determining whether the asserted grounds for an entry are constitutionally sufficient, the proper balance between "ironclad proof" and sheer speculation is found in the time-honored principle of reasonableness.  (See *New Jersey v. T.L.O.* (1985) 469 U.S. 325, 337 ["[a]lthough the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place"].)  The facts supporting the entry in this case satisfy that standard.

Accordingly, we hold that the officer's entry into M.D.'s residence without a warrant was reasonable under the emergency aid exception and that the evidence obtained inside was the product of a lawful search.  As this evidence supports the

---

[7]    In *Brigham City*, officers responding to a noise complaint heard an altercation occurring inside the dwelling. (*Brigham City, supra*, 547 U.S. at p. 406.)  When they looked inside, they saw a juvenile strike an adult in the face, causing him to spit blood. (*Ibid.*)  In *Fisher*, the officers were confronted with the following scene:  "[A] pickup truck in the driveway with its front smashed, damaged fenceposts along the side of the property, and three broken house windows, the glass still on the ground outside.  The officers also noticed blood on the hood of the pickup and on clothes inside of it, as well as on one of the doors to the house." (*Fisher*, *supra*, 558 U.S. at pp. 45-46.)  When they looked inside the house they saw the defendant "screaming and throwing things." (*Id.* at p. 46.)  The officers noticed a cut on his hand, and they asked him whether he needed medical attention. (*Ibid.*)

magistrate's ruling holding Norton to answer, the trial court properly denied the motion to set aside the information (§ 995).

Having addressed Norton's challenge to his conviction, we turn to his request for additional presentence conduct credit.

## II.     Norton Is Not Entitled to Additional Presentence Conduct Credit Pursuant to the January 25, 2010 Version of Section 4019

As noted, at the December 17, 2008, sentencing, the trial court awarded Norton a total of 127 days of presentence credit, which included 42 days representing two days of conduct credit for every four days spent in local custody.  (Former § 4019, subds. (a)(4), (b), (c), (f); Stats. 1982, ch. 1234, §§ 7, 8.)  Thereafter, the Legislature amended section 4019, operative on January 25, 2010, which doubled the rate at which qualified prisoners accrued presentence conduct credit.  (Stats. 2009-10 (3d Ex. Sess.) ch. 28, § 50; see Historical and Statutory Notes, 51C Pt. 1 West's Ann. Pen. Code (2011 ed.) foll. § 4019, p. 149.)  Thus, under the January 25, 2010 version of section 4019, qualified prisoners were entitled to up to two days of conduct credit for every two days they spent in local custody.  (Former § 4019, subds. (a)(4), (b)(1), (c)(1), (f); Stats. 2009-10 (3d Ex. Sess.) ch. 28, § 50.)  On appeal Norton contends he is entitled to 42 days of additional presentence conduct credit under the January 25, 2010 version of section 4019.

In our prior opinion, we agreed with Norton that he was entitled to additional presentence conduct credit because the January 25, 2010 version of section 4019 should be given retroactive effect.  In light of our determination, we did not decide whether prospective application of the January 25, 2010 version of section 4019 would violate Norton's constitutional equal protection rights.  On May 15, 2013, the Supreme Court transferred this matter back to this court with directions to vacate our prior decision and reconsider the cause in light of *Brown, supra,* 54 Cal.4th 314.

In *Brown,* our Supreme Court concluded that the January 25, 2010 version of section 4019 did not apply retroactively to a defendant, like Norton, who committed his offenses before the statute's operative date.  (*Brown, supra*, 54 Cal.4th at pp. 325-328.)  The Court also rejected Brown's argument that a prospective application of former

11

section 4019 would violate the equal protection clauses of the state and federal Constitutions.  (*Brown, supra*, at pp. 328-330.)  Because we are bound by the *Brown* decision (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p. 455), we now hold that Norton is not entitled to additional presentence conduct credit pursuant to the January 25, 2010 version of section 4019.

## DISPOSITION

The judgment is affirmed.

 

 

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.