[Crim. No. 43372. Second Dist., Div. Five. Dec. 20, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
ANTHONY EUGENE ANDERSON, Defendant and Respondent.

**COUNSEL**

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Roger F. Potash, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

FEINERMAN, P. J.—The People appeal[1] from an order dismissing this case[2] after the trial court quashed an arrest warrant for the defendant and the People were unable to proceed in light of the consequent suppression of the evidence. The sole issue before us is the propriety of the court order quashing the warrant. We find the superior court erred and reverse the order on review.

### Statement of Facts

On December 26, 1978, the body of Robert Boyd was found in a 1971 blue Pinto automobile located on Penn Street in the City of Pasadena. The victim had multiple stab wounds on his chest and arms. Officer Van B. Anthony was assigned to investigate the murder and requested Joseph F. Downs, a fingerprint expert for the Pasadena Police Department, to dust the automobile for fingerprints. Downs found 15 blue, green, and beige hair curlers on the floor of the automobile. No pink curlers were found in the vehicle. Downs lifted a latent fingerprint from one of the blue hair curlers which matched a fingerprint of defendant on file with the Pasadena Police Department. Officer Anthony was advised of the "positive make."

Thereafter, Anthony prepared an affidavit for an arrest warrant for defendant together with supporting materials. Twenty-two pages of "investigative reports" were attached to the affidavit. In his investigative report, dated February 8, 1979, Anthony stated that a witness, Laemon Eugene Lee, had observed the victim with an "unidentified person" on December 26, 1978, at 2 p.m. The "unidentified person" was described as 5 feet 9 inches, 155 pounds, 19-23 years old with "pink and blue hair curlers." Anthony further stated, "also Lee's description matches the 'pink' and 'blue' curlers found on the floor of the blue Pinto. Said curlers contained latent fingerprints as collected by Joe Downs." Another document included in the investigative report stated: "Joe Downs found that the suspect's finger prints matched finger prints found on the hair curlers from the floor of the vehicle."

At the hearing to traverse the arrest warrant, Anthony testified that he just "assumed" that the hair curlers found in the automobile were pink and blue and acknowledged that he had seen hair curlers laying on the floor of

---

[1]This appeal is brought pursuant to Penal Code section 1238, subdivision (a)(7).

[2]Defendant was charged with two counts of robbery (Pen. Code, § 211), one count of burglary (Pen. Code, § 459), three counts of forcible sodomy (Pen. Code, § 286, subd. (d)), and three counts of false imprisonment (Pen. Code, § 236) arising out of his alleged entry into a residence on the night of December 13, 1978. Three victims were involved.

the car when he was at the crime scene. He stated he never saw the hair curlers again prior to making out the affidavit for the arrest warrant. The trial court held that Officer Anthony's error relative to the color of the hair curlers found in the automobile was reckless rather than wilful. The court stated: "What concerns me now is had the judge known that there were two different colors of hair curler, there is no question in my mind that warrant would not have been issued. There would have been no evidence at all. You have got different colored curlers. That's one thing that tied him in and it doesn't tie him in; yet, there is a police report telling the judge pink and blue." Relying upon *People* v. *Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130], the court then quashed the arrest warrant.

## DISCUSSION

■ At the outset we point out, as we did in *In re Larry C.* (1982) 134 Cal.App.3d 62, 66-67 [184 Cal.Rptr. 505], that the case law permitting a defendant to attack a facially sufficient search warrant affidavit on the grounds that it contains misstatements or omissions is equally applicable to arrest warrant affidavits. "The amalgam of the holdings in *People* v. *Sesslin* (1968) 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321] and *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333] mandates this conclusion." (*In re Larry C., supra,* 134 Cal.App.3d, at pp. 66-67.)

In *People* v. *Cook, supra,* 22 Cal.3d 67, the California Supreme Court, relying solely on article I, section 13 of the California Constitution, determined that intentional or reckless misstatements compel automatic quashing of search warrants regardless of the effect on probable cause. When misstatements are negligently made, the trial court must excise the negligent misstatements and test the remainder for probable cause. (*People* v. *Cook, supra,* 22 Cal.3d at pp. 84-85; see also *People* v. *Kurland* (1980) 28 Cal.3d 376, 383, fn. 2 [168 Cal.Rptr. 667, 618 P.2d 213].) In reaching this conclusion in *Cook,* the California Supreme Court specifically rejected the holding of the United States Supreme Court in *Franks* v. *Delaware* (1978) 438 U.S. 154, 155-156 [57 L.Ed.2d 667, 672, 98 S.Ct. 2674] wherein it was held that the Fourth Amendment requires only that intentional or reckless misstatements be excised and the remainder of the affidavit be retested for probable cause.

Since the defendant was arrested in February 1979, we are required to apply the principles articulated by the California Supreme Court in *Cook* and *Kurland.* (*People* v. *Smith* (1983) 34 Cal.3d 251, 258-263 [193 Cal.Rptr. 692, 667 P.2d 149].) If the arrest had occurred after June 8, 1982, we would be obligated to follow *Franks* under the mandate of the California Constitution, article I, section 28, subdivision (d). (Prop. 8—which was

passed by the voters of this state on June 8, 1982, and took effect the following day.)

 The key issue in this case is whether or not there was sufficient evidence to support the trial judge's conclusion that Anthony's misstatement regarding the color of the hair curlers found on the floor of the automobile was "reckless." Whether the misstatement was negligent, made with a reckless disregard for the truth, or intentional is a question of fact for the trial judge, and if there is substantial evidence to support his conclusion, we are bound by his decision.

 In light of the fact that defendant's fingerprint was on a *blue* hair curler found in the victim's automobile [the material evidence tying the defendant to the offense for the purpose of probable cause] and in light of the fact that the victim was seen earlier on the day of the murder with an "unidentified person" who was wearing *blue* and pink hair curlers, whether or not there were any pink hair curlers in the victim's automobile was relatively unimportant. What is important is the fact that the "unidentified person" was wearing *blue* hair curlers and defendant's print was found on a *blue* hair curler. Fingerprint evidence is the strongest evidence of identity and is sufficient by itself to constitute probable cause for arrest. (*People* v. *Gardner* (1969) 71 Cal.2d 843, 849 [79 Cal.Rptr. 743, 457 P.2d 575].)

Officer Anthony was present when the victim's car was viewed and had an obligation to record and report all relevant information gathered by him in an accurate fashion at all times. He had no right to "assume" that pink curlers as well as blue curlers were found in the vehicle. Nevertheless, we recognize that pastel colors can be confused or forgotten or even not noted. Beige and pink are close in color tone. We also recognize that the correlation of the blue hair curler found in the vehicle with the wearing of blue hair curlers by the "unidentified person" could lead to a careless assumption, in the absence of specific recall, that the pink hair curlers worn by the "unidentified person" also had their counterparts in the victim's automobile. Psychologists have described this behavior as "subconscious association."

 Given the totality of the evidence in this case, was there substantial evidence justifying the judge's categorization of Anthony's misstatement as "reckless?" We do not believe so. Certainly, Anthony's misstatement was negligent and demonstrated a failure to exercise proper care. But we do not believe his misstatement can be labeled as "reckless." We find no evidence demonstrating a reckless disregard of the truth—"a sworn misstatement made with conscious indifference to whether it is true or false [which] is

deemed the equivalent of an allegation actually known to be untrue." (*People* v. *Cook, supra,* 22 Cal.3d 67, 90.)

The order is reversed. The trial court is directed to excise the misstatement which we have determined to be negligently made and test the remainder of the affidavit for probable cause.

Stephens, J., and Ashby, J., concurred.

A petition for a rehearing was denied January 13, 1984.