[No. B004448. Second Dist., Div. Two. Nov. 27, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
OMAR RAMIREZ, Defendant and Appellant.

**COUNSEL**

Michael D. Abzug for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Having been charged by information with possession for sale of cocaine (Health & Saf. Code, § 11351), with a further allegation of possession of more than one ounce of that substance (Pen. Code, § 1203.04, subd. (b)(1)), appellant pleaded not guilty and moved to quash the search warrant made and utilized on July 28, 1983, to produce the evidence which incriminated him,[1] on the ground the warrant was facially insufficient to establish probable cause for its issuance. When the motion was denied, appellant was convicted upon his new plea of guilty and his admission of the one ounce allegation, and was sentenced to state prison for a term of two years. His contention on appeal, of course, is that the motion should have been granted, thereby obviating any possibility of his further prosecution on the charged offense.

That contention, in our opinion, is unmeritorious, owing to the reasoning and result found in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], which we deem controlling herein in view of the mandate of California Constitution, article I, section 28, subdivision (d).[2] (See *Peo-*

---

[1] Such evidence consisted, inter alia, of nearly 700 grams of cocaine.

[2] In pertinent part, the subdivision, effective as of June 9, 1982, provides that "relevant evidence shall not be excluded in any criminal proceeding."

*ple* v. *Anderson* (1983) 149 Cal.App.3d 1161, 1164-1165 [197 Cal.Rptr. 413].)

In *Gates,* the Bloomingdale, Illinois Police Department on May 3, 1978, received by mail an anonymous handwritten letter which read:

"This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue, his wife, drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.

"They brag about the fact they never have to work, and make their entire living on pushers.

"I guarentee [*sic*] if you watch them carefully you will make a big catch. They are friends with some big drugs dealers, who visit their house often.

"Lance and Susan Gates
Greenway
in Condominiums"

After deciding to pursue the tip so provided, the police ascertained a specific address for the suspects and learned that an "L. Gates" had made a reservation on a scheduled airline to fly to West Palm Beach, Florida on May 5. Working with federal Drug Enforcement Administration agents, they also discovered Lance Gates had taken the flight, gone to a hotel room registered to Susan Gates, and had left the hotel with a woman the following morning in an automobile owned by the Gates', heading toward Chicago, a trip involving about 24 hours driving time.

On the basis of the foregoing, the police sought and obtained a search warrant for the Gates' residence and vehicle, which, when served upon the couple as they arrived home some 22 hours after departing West Palm Beach, produced contraband leading to their prosecution. The items seized, however, were ordered suppressed as evidence by the Illinois circuit court on the ground the affidavit in support of the warrant was inadequate to establish probable cause, and that determination was affirmed in turn by the

Illinois appellate court and by a divided vote of the Supreme Court of Illinois.

The United States Supreme Court reversed, upon a rationale which found that the so-called "two-pronged test" employed in the case and which was derived from the decisions in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584][3] should be abandoned in favor of a "totality of the circumstances analysis that traditionally has informed probable cause determinations." (*Illinois* v. *Gates, supra,* 462 U.S. 213, at p. 233 [76 L.Ed.2d at p. 545].) Under that analysis, rather than resorting to "an elaborate set of legal rules that have developed among various lower courts to enforce the 'two-pronged test'" (*Id.* at p. 229 [76 L.Ed.2d at p. 542]), (see fn. 3), the task of a magistrate issuing a warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of crime will be found in a particular place." (*Id.* at p. 238 [76 L.Ed.2d at p. 548], italics added.) Such a fair probability, the high court concluded, was present in *Gates,* owing to the fact the investigation efforts of local and federal authorities had substantially corroborated the Gates' modus operandi.

In the instant matter, the affidavit of Los Angeles County Deputy Sheriff Richard M. Sloan, a veteran of 23 years on the force, the last 13 years of which he was assigned to the department's narcotics bureau, asserted, in substance, the following as a statement of probable cause in support of the search warrant's issuance: That during the third week of July 1983, Sloan received a telephone call from a confidential reliable informant who told him he had met with a person, one "Omar," who had been in possession at his apartment of one-half a kilo of cocaine during the week of July 22, 1983; that Omar drove a 1979 red/gray Ford sedan which he used in delivering the drug to customers; that Omar was going to Miami on the weekend of July 23 and 24, 1983, and would bring back three kilos of cocaine; that Omar carried a beeper and used pay phones to conduct his sales; that Sloan would know when Omar was in possession of the drug by his utilization of

---

[3]"Following *Aguilar,* California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the information was credible or his information reliable." (*People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].)

such phones; that the informant did not know Omar's precise address, but that he lived in a three-story apartment building numbered 260 with an underground security type garage, in a unit designated "K"; that Omar was a thirty-five-year-old five feet six-inch male with a mustache, who had come to this country from South America about a year earlier; that Sloan's investigation of this information confirmed that a person by the name of Omar Ramirez was paying the water bills at 260 South 6th Street, apartment K in Burbank; that Omar Ramirez had a California driver's license showing him to be a five feet six-inch male with brown hair and eyes, born March 20, 1949; that Sloan went to the address described, which he observed to be a three-story building with an underground security type garage, where, from a photograph of Ramirez, the manager identified him as the tenant of apartment K; that the manager also told Sloan Omar was from Venezuela, did not speak English, paid $850 a month rent, always in $20 bills, never left his apartment until 11 or 12 o'clock in the morning, and drove a 1979 red/gray Ford; that on July 26, 1983, Sloan conducted a surveillance at the 6th Street address, where Omar was observed on the balcony of the apartment; that, continuing the surveillance, Sloan followed Omar when he left the residence in a 1979 red/gray Ford; that Omar, over about a five-hour period, proceeded to South La Brea Boulevard in Los Angeles, to Culver City, to Encino and back to Culver City, at each of which locations, after meeting with one or two other persons or entering a business establishment, he made several calls from pay phones; and that during this period Omar carried a beeper on his belt.

■ As was true in *Gates,* the factual showing provided in the affidavit here under consideration, which detailed the effort made and results obtained by the sheriff's department in pursuing the tip afforded by an informant, substantially corroborated the modus operandi of appellant, and presented to the issuing magistrate data from which he could, and did, make a practical, commonsense decision that, under all the circumstances, there was a fair probability that contraband would be found in a particular place, viz., appellant's apartment. No more was required.

Nor is this conclusion varied, as appellant suggests it should be, by the consideration that the conduct of appellant observed by Officer Sloan could be characterized, in and of itself, as innocent activity, since, as was further pointed out in *Gates,* "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular

types of non-criminal acts."[4] (*Illinois* v. *Gates, supra,* 462 U.S. 213, at pp. 243-244, fn. 13 [76 L.Ed.2d at p. 552].)

The judgment of conviction is affirmed.

Compton, J., and Beach, J., concurred.

---

[4]Having so decided, we need not address appellant's additional contention that the "good faith" exception to the exclusionary rule announced in *United States* v. *Leon* (1984) 468 U.S. — [82 L.Ed.2d 677, 104 S.Ct. 3405], should not be applied retroactively.