[No. B016480. Second Dist., Div. Seven. Jan. 22, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MICHAEL MAYER, Defendant and Appellant.

1104

COUNSEL

Janet Sherman and Victor Sherman for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KRIEGLER, J.*—In an information filed by the District Attorney of Los Angeles County, appellant James Michael Mayer was charged in count I with possession of cocaine for the purpose of sale (Health & Saf. Code, § 11351) and in count II with possession of marijuana for the purpose of sale (Health & Saf. Code, § 11359). Following denial of appellant's motions pursuant to Penal Code sections 995, 1531 and 1538.5, appellant pleaded guilty to the charge in count I of possession of cocaine for the purpose of sale. Appellant was placed on probation for five years, with the first year to be served in county jail. Appellant purports to appeal "from the denial of motions pursuant to Penal Code sections 1538.5, 995 and 1531."[1]

Appellant raises the following three issues in the instant appeal:

(1) Failure to comply with the knock-notice requirements of Penal Code section 1531 in this case cannot be condoned;

(2) The affidavit in this case does not meet the probable cause standard; the motion to quash the warrant should have been granted; and

---

*Assigned by the Chairperson of the Judicial Council.

[1] The orders denying appellant's motions pursuant to Penal Code sections 1531 and 1538.5 are not separately appealable. (Pen. Code, § 1237; People v. Hammonds (1974) 39 Cal.App.3d 150, 152 [113 Cal.Rptr. 896].) Similarly, the order denying appellant's Penal Code section 995 motion is not appealable. (People v. Phipps (1961) 191 Cal.App.2d 448, 454 [12 Cal.Rptr. 681].) We treat the appeal as if taken from the judgment, which permits appellate review of these nonappealable orders. (See People v. Lilienthal (1978) 22 Cal.3d 891, 895-897 [150 Cal.Rptr. 910, 587 P.2d 706]; People v. James (1971) 17 Cal.App.3d 463, 465 [95 Cal.Rptr. 121].)

(3) Appellant's motion to traverse the search warrant should have been granted.

FACTS RELATING TO EXECUTION
OF THE SEARCH WARRANT

A search warrant was served on appellant's residence in Woodland Hills on June 30, 1982. Deputy Richard Wenig of the Los Angeles Sheriff's Department, the affiant on the warrant, sought the assistance of the special enforcement bureau in execution of the warrant. The special enforcement bureau of the sheriff's department is specially trained in gaining entry into barricaded locations.

Deputy Wenig told Deputy Gheral Taylor of the special enforcement bureau that the location to be searched was heavily barricaded in the front and surveillance cameras were in place. Deputy Wenig told Sergeant Arthur Fransen that the Los Angeles Police Department had previously attempted to gain entry to the same residence, but had encountered difficulty due to its fortification and the camera, resulting in the loss of a sizeable amount of narcotics. Deputy Wenig also stated he believed there were weapons present at the location.

Deputy Taylor drove by the residence and observed the front door to be barred with wrought iron grill work. He also saw a camera or monitoring device. A helicopter then flew over the residence to obtain an aerial view of the scene.

It was decided that it would be safest to serve the search warrant in the afternoon. A plan was devised which would split the special enforcement bureau into two teams. The team headed by Sergeant Fransen would traverse a mountain behind the residences next to appellant's, climb over a fence and enter through a sliding glass door by the patio. The second team was to go to the front door of the residence.[2]

Sergeant Fransen explained that the decision to seek entry through the rear door was based upon the iron gate barring entrance in the front. If the officers could gain the attention of the occupants of the house through the iron gate,[3]

---

[2]Sergeant Fransen and Deputy Taylor provided differing descriptions of the role of the team at the front door. Deputy Taylor said the team in front was to enter the residence simultaneously with the team in the backyard. Sergeant Fransen testified the officers in front were not going to enter, but were only to guard against people exiting through the front. In fact, entry was not made through the front door until after entry through the sliding door in the rear and keys were obtained to open the door.

[3]There was a buzzer and a speaker at the front door of the residence.

the officers would be "totally vulnerable" to attack from within and narcotics would be destroyed.

From a safety standpoint, Sergeant Fransen concluded it would be "ridiculous" to stand in front of an iron gate and demand entry. Sergeant Fransen testified, "they could refuse our request" to enter, and "we can stand outside until we all were old and gray and ready for retirement."

Deputy Taylor, who possessed a copy of the search warrant, was part of the rear team headed by Sergeant Fransen. Deputy Taylor wore green fatigues which contained the Los Angeles County Sheriff's patch. The deputies also had baseball caps with the sheriff's six-pointed star.

The entry team traversed behind three houses over what appeared to be private property until arriving at the rear of appellant's residence. The residence has a sliding glass door which opens onto a patio in the rear. The entry team climbed over a fence and was on the patio when appellant's brother, David Mayer, exited the residence and walked onto the patio, leaving the sliding door open behind him.

Sergeant Fransen identified the officers as sheriff's deputies and announced they had a search warrant.[4] This announcement was described by Deputy Taylor as a "loud identification." David Mayer was detained at this time on the patio. Deputy Beene, who was in front of Deputy Taylor, said, "They are running." Deputy Taylor saw two men running through the house, which he thought was in response to the loud identification of the deputies on the patio.

Deputy Taylor yelled, "Sheriff's Department, Sheriff's Department." Either Deputy Taylor or Sergeant Fransen yelled that they had a search warrant. This announcement was made before entry into the residence through the sliding glass door.

Once inside Deputy Beene ran in the direction of two men moving toward the back of the house. Deputy Taylor observed appellant exit a bedroom carrying a clear plastic baggie containing a white powder. Appellant immediately began to run back into the bedroom and then into a bathroom. A later search of the bathroom led to recovery of plastic baggies containing cocaine from the toilet bowl, floor and shower. A handgun was found on a night stand in the same bedroom.

---

[4]David Mayer testified he did not hear anyone say they were from the sheriff's department or that they had a search warrant. He also did not see the sheriff's logo on the officers' uniforms or hats.

I

## The Officers Did Not Violate Penal Code Section 1531 in Their Entry Into Appellant's Backyard and Residence

Appellant first argues that the "Rambo" approach to service of the search warrant ran afoul of the knock-notice provisions of Penal Code section 1531. Appellant reasons that the officers violated section 1531 by climbing over a fence into his backyard. He also argues there was no excuse for noncompliance with section 1531 when the deputies entered appellant's residence. Finally, appellant argues it was impossible to comply with section 1531 at the sliding glass door at the rear patio because there "was essentially no back door."

### A. Entry Into the Backyard

█ Turning first to the contention that the officers should have complied with section 1531 before climbing over a fence into appellant's backyard, we find nothing in the express language of section 1531[5] to require such an announcement. It is clear from the language of section 1531 that the Legislature did not envision requiring officers to knock and announce at a gate or fence in attempting to serve a warrant on a house.

In *People* v. *Bencomo* (1985) 171 Cal.App.3d 1005 [217 Cal.Rptr. 826], the court rejected the contention that the knock-notice requirement of section 1531 applied to a concrete wall and padlocked wrought iron gate surrounding a residence. "We conclude that the knock-notice requirements of section 1531 ordinarily do not apply to gates or fences." (*Id.,* at p. 1015.) The court in *Bencomo* did leave open the possibility that section 1531 might apply to walls or gates in some circumstances "because the configuration of a residence and its appurtenances is particularly unique to each residence." (*Ibid.*)

Examining the circumstances in the present case, we conclude the knock-notice requirement of section 1531 did not apply before the officers climbed over the fence into appellant's backyard. First, there was no one in the backyard at the time to receive the notice. Second, there is nothing in the record to indicate that the fence surrounding the backyard was situated in such a way as to be deemed an integral part of the house itself. Whatever

---

[5]Section 1531 provides as follows: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

privacy existed in appellant's backyard was as much the result of the natural hillside as the fence.

The determination of whether section 1531 applies to entry into a backyard also depends on the purposes and policies supporting the rule. ■ In *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628], the court explained the four policies supporting the knock-notice requirement as follows: (1) protection of the privacy of the individual in his home; (2) the protection of innocent persons who may also be present on the premises when an arrest is made; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice; and (4) the protection of police who might be injured by a startled and fearful householder.

■ The policies supporting section 1531 provide no basis for concluding the officers were required to knock and announce their presence and purpose before entering appellant's backyard by climbing over the fence. Because the fence was not part of the house itself, and no one was in the backyard at the time the officers climbed the fence to perceive notice of the deputy's presence, we conclude section 1531 was not applicable to entry into the backyard.

The question remains as to whether it is proper for officers, armed with a search warrant, to seek entry through the rear door of a residence. Counsel for appellant expressly conceded this issue in the trial court, stating, "I am not saying you have to go to the front door," and, "They can go in the back door as long as they comply with 1531."

In the instant case, entry through the rear door was not merely an option, it was the *only* practical means of entry into the residence. As Sergeant Fransen noted, the front door was barred with a wrought iron gate and protected by a surveillance camera. This situation left the officers vulnerable to attack from inside if they had attempted to serve the warrant at the front door, and also could have resulted in destruction of narcotics while officers stood by futilely attempting to gain entrance.

■ Moreover, the officers had an absolute right to be on appellant's property based upon the search warrant. Indeed, the officers were on the property in obedience to a judicially sanctioned search warrant. (*People* v. *Thompson* (1979) 89 Cal.App.3d 425, 431 [152 Cal.Rptr. 495].) Nothing more than possession of the warrant itself was required to authorize the officers' presence on appellant's property outside of the residence. (See *People* v. *Bencomo, supra,* 171 Cal.App.3d at pp. 1015-1016.)

■ Nor is appellant in a position to complain about the officers' decision to attempt to enter the residence through the rear. Faced with a barred front door and surveillance camera, the officers were not required to go through the futile exercise of trying to knock and announce at the front door. Under similar circumstances, it has been held that officers may reasonably believe the occupant of a fortified residence would not readily admit officers in possession of a search warrant "without first disposing of any contraband that might be on the premises." (*People* v. *Thompson, supra,* 89 Cal.App.3d at p. 431.) Penal Code section 1531 is intended in part to preserve the sanctity of one's home, but not at the expense of making the home "a sanctuary for the destruction of evidence." (*People* v. *Alaniz* (1986) 182 Cal.App.3d 903, 907 [227 Cal.Rptr. 575].)

Finally, we fail to understand appellant's argument that compliance with section 1531 was impossible at the sliding glass door because, "There was essentially no back door." There is no reason in law or logic why compliance with section 1531 cannot be made at a sliding glass door. Indeed, section 1531 refers to breaking "*any* outer or inner door or window" to gain entry. (Italics added.) Appellant's contention is without merit.

B. *Entry Into the Residence From the Rear Patio*

Having ruled that the officers were lawfully in the back yard of appellant's residence, the next issue is whether they lawfully entered through the sliding glass door. The magistrate at the preliminary hearing ruled compliance with section 1531 was excused, and this ruling was impliedly upheld upon denial of appellant's motion under Penal Code section 995. The trial court, considering the issue de novo pursuant to Penal Code section 1538.5, concluded there was compliance with section 1531. Because of the different rulings of the magistrate and trial court, and the different standards of appellate review of motions under Penal Code sections 995 and 1538.5, we separately analyze the rulings.

1. *The Magistrate's Ruling—Excused Compliance*

The magistrate at the preliminary hearing ruled that compliance with section 1531 was excused. Appellant now challenges the trial court's denial of his motion pursuant to Penal Code section 995, which reviewed the magistrate's findings. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 717-718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

■ For purposes of a motion under Penal Code section 995, it is the magistrate who is the finder of fact, and both the superior court and the reviewing Court on Appeal must draw every legitimate inference in favor

of the information. (*Id.*, at p. 718; *People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].) The appellate court in effect disregards the ruling of the superior court on the section 995 motion and directly reviews the determination of the magistrate. (*People* v. *Laiwa, supra,* 34 Cal.3d at p. 718.)

■ It has been consistently held that compliance with Penal Code section 1531 is excused if sufficient facts are known to the officer before his entry to support a good faith belief that compliance will increase his peril, frustrate the arrest or permit the destruction of evidence. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 877 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; *People* v. *Flores* (1982) 128 Cal.App.3d 512, 521 [180 Cal.Rptr. 368]; *People* v. *Vargas* (1973) 36 Cal.App.3d 499, 503 [111 Cal.Rptr. 745]; *Brown* v. *Superior Court* (1973) 34 Cal.App.3d 539, 543 [110 Cal.Rptr. 107].) Furthermore, strict compliance with section 1531 is excused where the entering officers reasonably believe the purpose of entry is already known to the occupants. (*People* v. *Flores, supra,* 128 Cal.App.3d at p. 521; *People* v. *Vargas, supra,* 36 Cal.App.3d at p. 504; *Brown* v. *Superior Court, supra,* 34 Cal.App.3d 539.)

■ The magistrate's conclusion that compliance with section 1531 was excused is supported by substantial evidence. Before any officer entered the residence, appellant's brother was detained on the patio, at which time the officers were identified as sheriff's deputies. Deputy Taylor then heard Deputy Beene say, "They are running," and observed two men moving from left to right in the house. Out of concern for safety, Deputy Taylor followed Deputy Beene into the house. He believed the people in the house were alerted to the officers' presence by the commotion on the patio when appellant's brother was detained and the officers' statement of identification. Deputy Taylor had in mind information he had received from Deputy Wenig that there had been weapons at the house.

Based on the foregoing, the magistrate properly inferred that the people inside appellant's residence "were suddenly informed" there were officers present to serve a search warrant and "a scattering was a result of that." The officers' observations of people moving through the house, after the officers were identified as sheriff's deputies, coupled with the fortified appearance of the residence and information that weapons might be present, justified a good faith belief that any further delay necessary to fully comply with section 1531 would increase peril or permit destruction of evidence. Compliance with section 1531 was excused under these circumstances. (*People* v. *Flores, supra,* 128 Cal.App.3d at p. 521; *Brown* v. *Superior Court, supra,* 34 Cal.App.3d at pp. 543-544.)

Appellant places heavy reliance on the magistrate's initial feeling that the deputies never intended to comply with section 1531. However, during argument on the section 1531 issue at the end of the preliminary hearing the prosecutor properly pointed out that no witness had testified the officers never intended to attempt to comply with section 1531.[6]

In the magistrate's final ruling at the close of the preliminary hearing it appears she abandoned her earlier opinion that there was no intent to comply with section 1531, and instead concluded that while there was no intent to comply *at the front door,* "it was perhaps to try a knock-notice entry through the back." The final ruling of the magistrate, after considering the arguments of counsel, was that it was "proper to attempt to serve the search warrant by coming over the backyard."

It is clear from the foregoing that despite the opinion the magistrate initially stated, she was eventually convinced after argument by counsel that the conduct of the officers was proper in attempting to serve the warrant in the rear of the residence. The initial opinion of the magistrate, that there was no intent to comply with section 1531, unsupported by direct evidence and ultimately abandoned by the magistrate, provides no basis for suppression of the fruits of the search of appellant's residence.

Appellant's reliance on *People* v. *Vollheim* (1978) 87 Cal.App.3d 538 [150 Cal.Rptr. 837], is misplaced. In *Vollheim,* a search warrant was issued for a residence equipped with closed circuit television monitors, burglar alarms, floodlights, a barricade and barred windows. The officers also had information regarding the defendant's possession of a firearm and possibly hand grenades. A plan of forcible entry was devised and followed, which called for a telephone call to be placed to the defendant to inform him of the officers' presence outside and the search warrant. Before giving the defendant a chance to open the door, tear gas canisters were fired into the residence and entry forced.

The Court of Appeal in *Vollheim* ruled that forcible entry violated section 1531 since the police devised an inflexible plan for entry without affording the defendant a chance to comply with a refusal for admittance. Because no exigent circumstances were established, the forcible entry was unlawful. (*Id.,* at p. 543.)

Unlike *Vollheim,* there was no evidence in the instant case of an inflexible plan to force entry without attempting to comply with section 1531.

---

[6]To the contrary, Sergeant Fransen testified the first option was to knock and advise the occupant of the search warrant to get compliance without force being used. He further testified they would respond to resistance accordingly, "and if need be, to make a forced entry."

Assuming the police had a secret intent not to comply with section 1531, that intent is irrelevant since developments at the scene excused compliance with section 1531.

In *People* v. *Dumas, supra,* 9 Cal.3d at page 877, the court noted that in the "typical case the officer discovers the facts that justify immediate entry only *after* approaching the residence." The facts in the instant case represent the "typical case" envisioned in *Dumas,* since it was the unexpected detention of appellant's brother on the patio which alerted the occupants inside the residence of the officers' presence and purpose before formal compliance with section 1531 could be completed. Regardless of the intent of the officers, the fact remains that the circumstances as they developed excused compliance with section 1531.

### 2. *The Trial Court's Ruling—Compliance With Section 1531*

Although the motion to suppress under Penal Code section 1538.5 was submitted on the transcript of the preliminary hearing, the trial court disagreed with the magistrate's conclusion that compliance with section 1531 was excused. Instead, the trial court ruled the officers "complied in essence with all of the requirements . . . under 1531."

██ Unlike motions under Penal Code section 995 where the magistrate is the finder of fact, it is well-settled under Penal Code section 1538.5 that the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence that on review of its ruling by appeal or writ all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence. (*People* v. *Laiwa, supra,* 34 Cal.3d at p. 718; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) ██ Given this standard of review, we conclude the superior court properly found there was substantial compliance with section 1531.

The testimony at the preliminary hearing established that when appellant's brother was detained outside of the residence on the rear patio, he was informed the officers were sheriff's deputies in possession of a search warrant. When people were observed moving in the house, Deputy Taylor yelled, "Sheriff's Department, Sheriff's Department," and either Deputy Taylor or Sergeant Fransen yelled they had a search warrant. This announcement was made before entry into the home.

The California Supreme Court has stated that while mere identification of an officer is normally not substantial compliance with the knock-notice

requirement, such identification could constitute substantial compliance "only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile." (*People* v. *Rosales* (1968) 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489]; see also *People* v. *Hall, supra,* 3 Cal.3d at p. 997.) Both of the *alternative* conditions set forth in *Rosales* and *Hall* are satisfied in the instant case.

The announcements that the deputies had a search warrant made the "officers' purpose clear" both to appellant's brother and those within earshot of the "loud announcement" through the open sliding glass door to the house. It was also reasonable for the superior court to impliedly conclude that "a demand for admittance would be futile" (*People* v. *Rosales, supra,* 68 Cal.2d at p. 302) in view of the fortified nature of the residence and the movements of the occupants inside the house. Section 1531 does not require a verbal refusal to admit police into the house (*People* v. *Bencomo, supra,* 171 Cal.App.3d at p. 1018; *People* v. *Gallo* (1981) 127 Cal.App.3d 828, 838 [179 Cal.Rptr. 662]), and certainly the facts in the instant case support the reasonable inference that it would have been futile to attempt to obtain voluntary admittance from people scattering throughout the residence.

We conclude that because the deputies' purpose was clear and it would have been futile to demand admission from people moving through the residence, there was substantial compliance with section 1531. The superior court therefore properly denied appellant's motion pursuant to Penal Code section 1538.5.

Assuming, arguendo, that the superior court erred in finding substantial compliance with section 1531, we nevertheless conclude compliance was excused for the reasons set forth earlier in this opinion. A decision of a trial court on a search and seizure issue will not be reversed if based on erroneous reasoning where the correct result was reached. ■ "The inquiry on appeal is whether, in fact, the decision of the trial court was correct, not the reasons he may have stated for making it." (*People* v. *Towner* (1968) 259 Cal.App.2d 682, 685 [66 Cal.Rptr. 559].)

II

THE AFFIDAVIT IN SUPPORT OF THE SEARCH
WARRANT CONTAINS SUFFICIENT FACTS TO
JUSTIFY A FINDING OF PROBABLE CAUSE

Appellant's second contention is that the affidavit in support of the search warrant does not contain facts sufficient to establish probable cause. Appellant first argues the reliability of the informant was not established. It is also

contended that some of the statements in the affidavit are "unreliable and unsupported." Appellant further argues that information regarding a prior narcotic transaction and appellant's 1973 arrest was too stale to establish probable cause.

■■■ Because the offense in the instant case was committed after the passage of Proposition 8, the search pursuant to the warrant must be judged by federal constitutional standards rather than independent state grounds. (*In re Lance W.* (1985) 37 Cal.3d 873, 885-889 [210 Cal.Rptr. 631, 694 P.2d 744].) Accordingly, the warrant must be upheld if it meets the totality of the circumstances test of *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317]. (*People* v. *Medina* (1985) 165 Cal.App.3d 11, 17 [211 Cal.Rptr. 216]; *People* v. *Ramirez* (1984) 162 Cal.App.3d 70, 71-72 [208 Cal.Rptr. 128].)

In *Illinois* v. *Gates,* the Supreme Court abandoned the two-pronged *Aguilar-Spinelli*[7] test for determining probable cause, and in its place adopted a "totality-of-the-circumstance analysis that traditionally has guided probable-cause determinations." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 233 [76 L.Ed.2d at p. 545].) The duties of the issuing magistrate and reviewing court were defined (at pp. 238-239 [76 L.Ed.2d at p. 548]) as follows: "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. . . ."

■■■ Although the reliability of an informant is now just one factor to consider in assessing probable cause (*Illinois* v. *Gates, supra,* 462 U.S. at p. 233 [76 L.Ed.2d at p. 545]), the reliability of the informant here is amply demonstrated on the face of the affidavit. The following paragraph from the affidavit sets forth the reliability of the informant in two respects: "On June 29, 1982, your affiant, Deputy R. Wenig, was contacted by a reliable, confidential informant. This informant has given your affiant information during the last two years in excess of ten times that has resulted in the issuance of search warrants, the seizure of controlled substance and the arrest of numerous suspects. This informant has also worked with other agencies and recently completed an investigation in which he was contacted by an undercover police officer which he did not know and has not been informed that

---

[7]*Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].)

that person was an undercover police officer. During the course of this investigation, the informant supplied information on a continuous basis and the information was confirmed as totally honest and accurate by the undercover police officer."

The assertion that the informant had given information to the affiant in excess of ten times over the last two years resulting in the issuance of search warrants, the seizure of controlled substances and the arrest of numerous suspects, establishes the reliability of the informant. (*People* v. *Dumas, supra,* 9 Cal.3d at p. 876 [informant found to be reliable where information led to arrest of three people who were held to answer]; *People* v. *Prewitt* (1959) 52 Cal.2d 330, 334-337 [341 P.2d 1] [information leading to two prior arrests established reliability]; *People* v. *Richardson* (1970) 6 Cal.App.3d 70, 74 [85 Cal.Rptr. 607] [two prior arrests based on informant's statements proved reliability].) ▉ Arrests need not lead to conviction in order to establish the reliability of an informant. (*People* v. *Dumas, supra,* 9 Cal.3d at p. 876.)

▉ Similarly, that portion of the affidavit indicating the informant had given credible information which was confirmed by an undercover officer in another investigation provided a firm basis for the magistrate to conclude the informant was reliable. ▉ The reliability of an informant may be established by information provided by other officers to the affiant. (*People* v. *Lopez* (1986) 181 Cal.App.3d 842, 845 [226 Cal.Rptr. 714].) Appellant's challenge to the reliability of the informant, on the face of the affidavit, is devoid of merit.

Appellant argues the affidavit was conclusory and reliance on the informant improper to the extent the affidavit states the informant saw cocaine "at the location" without indicating what location was involved. This is little more than nitpicking in view of the fact that the only address mentioned anywhere in the search warrant and affidavit was 4527 San Blas. The only reasonable interpretation of "the location" is that it referred to 4527 San Blas.

▉ Appellant further contends there is no support for the conclusion that 4527 San Blas was appellant's residence in the absence of checking of deeds, telephone or utility records. In *People* v. *Superior Court* (*Brown*) (1975) 49 Cal.App.3d 160, 166 [122 Cal.Rptr. 459], the defendant argued a search warrant affidavit was "insufficient in that the allegation of his residence in the premises to be searched is conclusionary." In rejecting the contention and overturning the trial court's decision to quash the warrant, the court reasoned as follows: "We disagree with the trial court. There is no reason in law or logic to disparage such an allegation as a mere recital of belief not worthy of credit. Viewed in a common sense rather than a hyper-

technical way, the allegation of residence is a direct averment under oath of the fact asserted and therefore was properly considered by the magistrate.

"We further conclude that the allegation of residence, considered in conjunction with the accompanying averments, in itself supplies sufficient reason to search the particularly described premises even in the absence of independent corroboration thereof. Hearsay reports of one's place of dwelling are easily verified and thus not inherently suspect in the same way as commonly circulated reports of criminal activity which may well be the product of nothing 'more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.' (*Spinelli* v. *United States* (1969) 393 U.S. 410, 416 [21 L.Ed.2d 637, 644, 89 S.Ct. 584].)" (*Id.,* at pp. 166-167.) There was no error in refusing to quash the search warrant on the basis it contained an impermissible conclusion regarding appellant's residence.

 The remaining issue is whether the affidavit contains facts sufficient to justify the magistrate to conclude there was probable cause to believe there was cocaine at appellant's residence. The affiant set forth the following facts: "The informant advised your affiant, Deputy R. Wenig, during the early morning hours of June 29, 1982, he observed what were in his opinion, several one-pound bags of a white powder that he believes to be cocaine. The informant stated that a person he knows as 'Jim' brought the packages into the location and the informant knows Jim as a major dealer of cocaine, and that Jim is connected with and sells to several people that the informatn [*sic*] has dealt with in the past. The informant has heard from sources known only to him that Jim is delivering up to ten kilos of cocaine a month. The informant further advised your affiant that during the last several months he has seen what he believes to be quantities of cocaine going into the location and that he he [*sic*] has observed numerous persons entering the location with briefcases, staying short periods of time and exiting, which is compatible with large cocaine selling operations. The informant on one occasion met with an individual as he was leaving the location and the individual furnished the informant with cocaine from a large plastic bag which the informant estimated to weigh several ounces. This individual advised the informant that he had purchased the cocaine from the 4527 San Blas location.

"The informant did not sample any of the white powder he saw in the morning of June 29th, but recognized the powder as cocaine and observed the people in the location using the powder by inhaling it into their nostrils in a manner similar to the ways he has observed people use cocaine in the past. Your affiant has been aware that drug transactions were possibly taking place at 4527 San Blas for approximately one year and has surveilled the location in the past. During the course of these surveillances your affiant has

observed numerous vehicles arriving at the location during early morning hours, has observed people entering the location, some carrying briefcases, remaining ten to fifteen minutes and then exiting, which is compatible in your affiant's opinion to patterns used by people purchasing controlled substances.

"Sergeant Tony Pelesgraph of the Los Angeles Police Department Narcotics Division has also received information relating to the 4527 San Blas address. This information indicates that the location is used during the early morning hours as a distribution point for large quantities of cocaine and Officer Pelesgraph has also observed people entering and leaving the location in a similar fashion as described above which he also believes is compatible with persons purchasing controlled substances.

"Your affiant has ascertained that the person living at the location is James Michael Mayer. A check on James Michael Mayer reveals that during 1973 he was arrested, along with several other persons, by Hermosa Beach Detective Lukin and Agents from State Narcotics at which time several pounds of cocaine were seized. It was Officer Lukin's opinion at that time that James Mayer was the person in control of the drugs that were seized and that he was distributing large quantities of cocaine at that time and after his arrest had moved the operation to another city. It is unknown at this time if James Mayer was convicted of the charges arising from that arrest. Officer Lukin is currently retired and living in another state, and related the above to your affiant over the telephone."

A review of the factual portion of the affidavit, construed in a common-sense fashion, establishes that a reliable informant saw what he believed to be several one-pound bags of cocaine at the residence at 4527 San Blas on June 29, 1982. The search warrant was issued one day later on June 30, 1982. A warrant issued one day after narcotics are observed in a residence by a reliable informant is supported by probable cause. (*People* v. *Mesa* (1975) 14 Cal.3d 466, 469-470 [121 Cal.Rptr. 473, 535 P.2d 337] [warrant upheld where informant observed narcotics in defendant's residence "within the previous six days"].)

Appellant's criticism of that portion of the affidavit which relates to information from Sergeant Tony Pelesgraph regarding narcotic activity at the location searched and appellant's 1973 arrest, without disposition, for possession of a large quantity of cocaine, is without merit. Neither of these facts detract in any way from the conclusion that the magistrate was presented with an affidavit establishing "a fair probability that contraband . . . will be found in a particular place." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].) Appellant's arguments to the contrary repre-

sent the "grudging or negative attitude" toward warrants strongly rejected in *Gates. (United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].)

The affidavit presented to the magistrate is not a "mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 239 [76 L.Ed.2d at p. 549].) Instead, the affidavit sets forth in commonsense fashion the factual observation of narcotics and those circumstances which tend to corroborate the informant. This information easily satisfies the totality of the circumstances test of *Gates.* (See also *Massachusetts* v. *Upton* (1984) 466 U.S. 727, 733-734 [80 L.Ed.2d 721, 727-728, 104 S.Ct. 2085].)

## III

### APPELLANT'S MOTION TO TRAVERSE THE SEARCH WARRANT WAS PROPERLY DENIED

 Appellant's final contention is that his motion to traverse the search warrant was improperly denied. In support of his position, appellant presents a list of 11 "intentional misstatements and omissions made by the affiant."

Pursuant to Penal Code section 1539 and section 1540, a defendant may attempt to controvert the facts contained in an affidavit in support of a search warrant. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 90-95 [104 Cal.Rptr. 226, 501 P.2d 234.]) The appropriate standard for review in this post-Proposition 8 case is found in *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674]. (*People* v. *Truer* (1985) 168 Cal.App.3d 437, 442-443 [214 Cal.Rptr. 869]; *People* v. *Luevano* (1985) 167 Cal.App.3d 1123, 1127-1128 [213 Cal.Rptr. 764].)

In *Franks* v. *Delaware, supra,* 438 U.S. at pages 155-156 [57 L.Ed.2d at p. 672], the Supreme Court held that under the federal Constitution an allegation that an affidavit for a search warrant contained deliberate lies or recklessly disregarded the truth constitutes grounds for quashing the warrant only if the allegedly false statement was necessary to the finding of probable cause. If the affidavit otherwise contains facts sufficient to support a finding of probable cause after the false information is "set to one side," no hearing on the alleged inaccuracies is required. (*Id.,* at pp. 171-172 [57 L.Ed.2d at p. 682].) If there are improper material omissions from the affidavit, as distinguished from intentional misstatements, the remedy is to add the omitted information to the affidavit and then retest for probable cause.

(*People* v. *Kurland* (1980) 28 Cal.3d 376, 388 [168 Cal.Rptr. 667, 618 P.2d 213].)

Turning to the alleged intentional defects in the affidavit, appellant first complains that the affiant intentionally omitted that the narcotics case against appellant in 1973 was dismissed after his arrest. However, the affidavit expressly states that it was unknown at that time if appellant was convicted. Deputy Wenig's testimony at the motion to traverse confirmed that he attempted to gain information as to the case disposition from the court, the Hermosa Beach Police Department and the arresting officer who had since moved out of state, but was unsuccessful at the time the warrant was obtained. It was only after the warrant was issued that Deputy Wenig learned the 1973 case was dismissed. Based on these facts, there was neither a misstatement nor omission pertaining to appellant's 1973 arrest.

The second alleged omission regards the "true background" of the informant, "especially his extensive criminal record and unusual behavior." Deputy Wenig did testify he knew the informant had suffered a felony conviction, but did not think it was necessary to put that information in the affidavit.

In the case of an omission, the first issue to be determined is whether the omission is material. (*People* v. *Kurland, supra,* 28 Cal.3d at p. 387; *People* v. *Lopez* (1985) 173 Cal.App.3d 125, 133-134 [218 Cal.Rptr. 799].) In *Kurland,* the court specifically held that details of an informant's reliability and criminal history are not material matters which must be included in an affidavit in support of a search warrant. Because all familiar with law enforcement know that informants criminally disposed or involved frequently have criminal records and a history of police contacts or pending criminal charges, the "details of their criminal pasts are not necessary to place the magistrate on notice of their potential unreliability." (*People* v. *Kurland, supra,* 28 Cal.3d at p. 393.) The court concluded as follows: "We therefore conclude that, in most cases, the issue of possible unreliability is adequately presented to the magistrate when the affidavit reveals that the affiant's source of information is not a 'citizen-informant' but a garden-variety police tipster. In such circumstances, predictable details of the informer's criminal past will usually be cumulative and therefore immaterial." (*Id.,* at p. 394.)

The affidavit here leaves no doubt the informant was not a "citizen informant." Deputy Wenig clearly set forth that the informant had provided him with information in excess of ten times. The affidavit also clearly stated the informant was experienced in use and sales of cocaine. These revelations alerted the magistrate to draw adverse conclusions about the informant's

reliability. Omission of the details of the informant's record and conduct was not a material omission. (*Ibid.*)

The third alleged omission cited by appellant pertains to the affiant's failure to detail "benefits thus far given and to be given to the informant." Assuming that this vague contention refers to monetary reward and/or aid to the informant in cases against him arising *after* the warrant was obtained, such information was both immaterial and speculative. As set forth above, the magistrate was well aware the informant was not a citizen-informant, but was instead an experienced informant "motivated by something other than good citizenship." (*People* v. *Smith* (1976) 17 Cal.3d 845, 850-851 [132 Cal.Rptr. 397, 553 P.2d 557].) The magistrate was therefore on notice that information may have been provided in response to "police pressure or may involve revenge, braggadocio, *self-exculpation, or the hope of compensation.*" (Italics added; *People* v. *Kurland, supra,* 28 Cal.3d at p. 393.) Adding to the affidavit that there was "a possibility charges would be dismissed would only have been surplusage," and Deputy Wenig "acted reasonably in omitting this fact." (*People* v. *Lopez, supra,* 173 Cal.App.3d at p. 134.)

Appellant's fourth factual challenge to the warrant alleges an intentional misstatement that the informant "in the past" was actively involved in the use and sale of cocaine, while Deputy Wenig knew the informant was still using cocaine at the time the warrant was obtained. We do not interpret the phrase "in the past" as narrowly as appellant, nor do we draw the inference from the words that the informant had stopped using cocaine. Appellant's interpretation of the description of the informant's involvement with cocaine is reminiscent of a " 'hypertechnical, rather than commonsense' " interpretation of the language in warrants condemned by the Supreme Courts of the United States and California. (*Illinois* v. *Gates, supra,* 462 U.S. at p. 236 [76 L.Ed.2d at p. 547]; *People* v. *Mesa, supra,* 14 Cal.3d at p. 469.) The affidavit did not mislead the magistrate into believing the informant had ceased his personal involvement with cocaine.

The fifth omission claimed by appellant pertains to the incident described in the affidavit in which the informant received cocaine from a person leaving appellant's residence. Appellant argues that Deputy Wenig should have included in his affidavit the name of the person who provided the cocaine to the informant, that the informant had no way of knowing where the cocaine came from and that the informant ingested the cocaine rather than turning it over to the police.

Deputy Wenig testified that although the informant told him the name of the person leaving appellant's residence, he did not feel it was necessary to include that person's name in the affidavit. We agree. The inclusion of

the name of the person who provided cocaine to the informant on the earlier occasion would not have substantially assisted the magistrate in judging the credibility of the informant or the existence of probable cause. This omission is accordingly not material. (*People* v. *Kurland, supra,* 28 Cal.3d at p. 385.)

Appellant's claim that there was an omission in failing to state in the affidavit that the informant had no way of knowing where the person obtained the cocaine supplied to the informant is factually without merit. The affidavit does not assert that the informant had personal knowledge as to the source of the cocaine, but instead relates that *the supplier* "advised the informant that he had purchased the cocaine" from appellant's residence.

Nor does appellant's argument that there was an impermissible omission in failing to inform the magistrate that the informant used the cocaine on this prior occasion require overturning the warrant. The magistrate was well aware that the informant was a cocaine user and seller. Additional information regarding the informant's cocaine usage would therefore be cumulative and not material. (*Id.,* at p 394.)

The sixth alleged omission is based on a claim that Sergeant Pelesgraph's information pertaining to narcotic activity was stale, as was Deputy Wenig's own attempt to corroborate information supplied by the informant through surveillance. Appellant's brief contains no citation to the record supporting his claim that Sergeant Pelesgraph's information was stale, and our own review of the record reveals no support for the argument. The argument therefore will not addressed on the merits and is deemed waived. (See *People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [188 Cal.Rptr. 123].) Insofar as Deputy Wenig's surveillance is concerned, the affidavit makes clear Deputy Wenig was interested in the location "for the past year." The magistrate was not misled into believing the surveillance by Deputy Wenig occurred other than within the last year.

The seventh alleged omission or misstatement as phrased by appellant, is the rather general contention there was "[r]eckless disregard for the truth regarding the reliability of" the informant. This nonspecific contention is presumably a summation of the other alleged misstatements mentioned by appellant. In any event, the contention is too vague to merit a specific response.

Eighth, appellant claims there was an "intentional omission of the fact that when [the informant] was used by law enforcement officers in the past, the information he provided was always corroborated before action was taken." This information was not material in that it certainly would not have substantially misled the magistrate as to the informant's reliability or prob-

able cause. To the contrary, inclusion of prior instances in which the informant was corroborated "would have *added* to probable cause, rather than detracted from it." (*People* v. *Watson* (1979) 89 Cal.App.3d 376, 384 [152 Cal.Rptr. 471].)

The ninth defect in the affidavit is the allegedly intentional omission of the fact that the source of the information that appellant was handling up to 10 kilos of cocaine a month was Romy Traugh, a person Deputy Wenig was investigating, and instead, inclusion of the deliberate lie that this information came from "sources known only to him." Appellant has failed to read the record in the light most favorable to the judgment. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) Deputy Wenig testified the informant did tell him the information came from sources known only to him. Deputy Wenig did not recall if the informant attributed this information to Romy Traugh. Appellant has not sustained *his burden* of establishing a falsehood regarding the source of information that appellant was delivering 10 kilos of cocaine per month. (*People* v. *Cook* (1978) 22 Cal.3d 67, 89 [148 Cal.Rptr. 605, 583 P.2d 130].)

The tenth misstatement alleged by appellant is the representation the informant "had seen controlled substances at the location on more than one occasion." The informant gave conflicting testimony on this subject during the motion to traverse the warrant at the preliminary hearing:

"Q. The question is, you had only been in the house on two occasions?

"A. Yes.

"Q. You only saw drugs in the house on only one occasion?

"A. That is right.

"Q. The first time you went in the house, you did not see any drugs?

"A. No, I did not.

"Q. The only time you ever saw drugs in the house was on the one occasion, the night or early morning hours of the arrest?

"A. That is right.

Q. Did you see any guns in the house on that occasion?

"A. I don't remember.

"Q. Did you ever—and those were the only two times also you ever actually were physically in Mr. Mayer's presence where you had a conversation with him?

"A. Yes.

"Q. How many other occasions have you or did you actually see drugs at that house?

"A. I saw people outside with them several times, after they had just left the house. I saw people get in their cars and use the drugs right there in front of the house.

"I saw people entering the house with drugs, but that is the only time I had ever been in the house where I seen drugs, was that night."

Based upon this testimony, it is not as clear as appellant suggests that it was a misstatement that the informant saw controlled substances at the location "on more than one occasion." The above testimony is consistent with the conclusion the informant saw cocaine at the location more than once, as opposed to the one time he saw it inside the house, although certainly the area is not without ambiguity. In any event, appellant has failed to establish that the affiant intended to defraud the magistrate, and mere negligence provides no basis to challenge a warrant. (*Franks* v. *Delaware, supra,* 438 U.S. at pp. 155-156, 170-171 [57 L.Ed.2d at pp. 672, 681-682]; *People* v. *Lopez, supra,* 173 Cal.App.3d at pp. 133-135.) Even if the challenged paragraph was excised from the affidavit on the theory it was an intentional misstatement, the balance of the information would still amply support a finding of probable cause. (*Franks* v. *Delaware, supra,* 438 U.S. at pp. 156, 171-172 [57 L.Ed.2d at pp. 672, 681-682].)

Finally, appellant argues there was an intentional omission of the fact that during the previous year the informant had provided Deputy Wenig with numerous vehicle license numbers, names and 200 photographs, but none of these "leads" had ever "panned out," which contradicts the assertion that surveillance by Deputy Wenig and Sergeant Pelesgraph resulted in observations compatible with patterns used by people purchasing controlled substances. We fail to see the connection between these unrelated facts.

To put the issue in proper prospective, we start by examining the questioned language in the affidavit, which indicated as follows: "Your affiant has been aware that drug transactions were possibly taking place at 4527 San Blas for approximately one year and has surveilled the location in the past. During the course of these surveillances your affiant has observed numerous

vehicles arriving at the location during early morning hours, has observed people entering the location, some carrying briefcases, remaining ten to fifteen minutes and then exiting, which is compatible in your affiant's opinion to patterns used by people purchasing controlled substances.

"Sergeant Tony Pelesgraph of the Los Angeles Police Department Narcotics Division has also received information relating to the 4527 San Blas address. This information indicates that the location is used during the early morning hours as a distribution point for large quantities of cocaine and Officer Pelesgraph has also observed people entering and leaving the location in a similar fashion as described above which he also believes is compatible with persons purchasing controlled substances."

The affidavit therefore set forth specific observations of appellant's residence by two law enforcement officers. Because these surveillances were conducted by the officers, their observations and opinions were not dependent on the informant. There is no apparent basis to conclude the officers' observations should not have been included in the affidavit as a means of corroborating the informant.

The remaining issue is whether Deputy Wenig erroneously omitted information from the informant regarding activities at appellant's residence. Deputy Wenig testified that he received information *from the informant* about "a lot of traffic up there, people going in and out with briefcases, staying very short periods of time." Occasionally the informant provided license numbers. Deputy Wenig testified this information did not pan out, meaning the informant "just didn't give me what I considered enough information for me to do a search warrant."

We have serious reservations as to the materiality of the omitted information concerning leads that did not pan out in Deputy Wenig's opinion. It is doubtful that the magistrate was substantially misled as a result of being deprived of information that earlier leads had not panned out to the satisfaction of Deputy Wenig's personal opinion as to probable cause for a warrant. (*People* v. *Kurland, supra,* 28 Cal.3d at p. 385.)

Assuming the information about prior leads should have been included, appellant presented no evidence to indicate the omission was unreasonable. Because appellant's motion to traverse was denied by both the magistrate and trial court, each has impliedly found no evidence of an unreasonable omission, and those implied rulings are supported by substantial evidence. Where, as here, an omission is reasonable no sanction is imposed. (*Id.,* at p. 388.)

## CONCLUSION

The appeal from the orders denying the motions pursuant to Penal Codes sections 995, 1531 and 1538.5 are dismissed. The judgment is affirmed.

Lillie, P. J., concurred.

Thompson, J., concurred in the judgment only.